837 F.2d 1527
 10 Fed.R.Serv.3d 696
 MARK SEITMAN & ASSOCIATES, INC., a Tennessee corporation
doing business in the State of Florida, Plaintiff-Appellee,
v.
R.J. REYNOLDS TOBACCO COMPANY, a New Jersey corporation
doing business in the State of Florida, Defendant-Appellant.
 No. 86-5878.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 25, 1988.
 
 James L. Armstrong, III, Smathers & Thompson, Anthony Deglomine III, Miami, Fla., Rodrick John Enns, Winston-Salem, N.C., for defendant-appellant.
 Lauri W. Ross, Hugo L. Black, Jr., Sam Daniels, Miami, Fla., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before TJOFLAT and VANCE, Circuit Judges, and ALLGOOD*, Senior District Judge.
 TJOFLAT, Circuit Judge:
 
 
 1
 In this diversity case, Mark Seitman & Associates, Inc. sued R.J. Reynolds Tobacco Co., Inc. for breach of contract. The jury returned a verdict for Seitman in the amount of $1,831,525. The district court denied Reynolds' posttrial motions and awarded prejudgment interest. Reynolds appeals, raising several issues. We affirm in part and reverse in part.
 
 I.
 
 2
 In July 1982, R.J. Reynolds Tobacco Co., Inc. entered into a contract with Mark Seitman & Associates, Inc., pursuant to which Reynolds agreed to sponsor a weekly sports tabloid Seitman proposed to publish during the football and basketball seasons. The contract provided that Reynolds was to be the exclusive advertiser in the tabloid and that Seitman was to publish twenty-five issues per year, during a "publishing cycle" running from September through March. Seitman had no other business apart from that which would be provided by the contract with Reynolds.
 
 
 3
 Under the terms of the contract, Seitman was to distribute the tabloid to convenience stores and similar locations, where copies would be made available to the public on a "giveaway" basis. Reynolds agreed to pay Seitman based on the number of copies printed each week, according to a formula set out in the contract. The contract had a five-year term and expressly provided that Reynolds could at its discretion terminate the contract by giving written notice to Seitman on or before March 1 of any contract year.
 
 
 4
 In December 1984, midway through the 1984-85 publishing cycle, Reynolds terminated the contract. Seitman thereafter brought this breach of contract suit in the district court, invoking jurisdiction under 28 U.S.C. Sec. 1332 (1982).[1] Asserting that the dispute was to be governed by North Carolina law,[2] Seitman alleged that Reynolds had wrongfully terminated the contract. Seitman sought recovery for lost profits, the value of its business, and close-down expenses.
 
 
 5
 The case proceeded to trial in March 1986. At the close of Seitman's case, Reynolds moved for a directed verdict pursuant to Fed.R.Civ.P. 50(a) on the ground that the evidence was insufficient to support a verdict in Seitman's favor. The court denied the motion. Reynolds then asked the court to rule, as a matter of law, that Seitman could not recover the value of its business. Emphasizing that it was free to terminate the contract with respect to all future publishing cycles provided it acted before March 1, 1985, Reynolds argued that its December 1984 termination could, at most, result in liability only for Seitman's lost profits for the remainder of the 1984-85 publishing cycle plus any close-down expenses that would have otherwise not been incurred. The court rejected Reynolds' argument, ruling that Seitman could recover the value of its business as well as the other items of damages.
 
 
 6
 Its motion for a directed verdict having been denied, Reynolds proceeded to put on its case. Seeking to prove that its termination was justified by Seitman's own failure to perform, Reynolds presented evidence gathered by a private investigator showing that the invoices Seitman submitted to Reynolds greatly overstated the number of copies Seitman had actually delivered to the distribution locations. At the close of all of the evidence, neither side moved for a directed verdict. Following a charge conference and the closing arguments of counsel, the court submitted the case to the jury. The jury rendered a verdict in Seitman's favor for $1,831,525, and the court entered a final judgment in that amount.
 
 
 7
 Reynolds thereafter moved the court for a judgment notwithstanding the verdict or a new trial. In a supporting memorandum, Reynolds again argued (1) that the evidence was insufficient to support the verdict, and (2) that Seitman could not, as a matter of law, recover the value of its business. Additionally, Reynolds argued that even if Seitman could recover the value of its business, it could not additionally recover lost profits as a separate item of damages, since the value of the business necessarily included future lost profits.
 
 
 8
 The district court ruled that the evidence was sufficient to support the verdict and that Seitman was legally entitled to recover the value of its business. The court also ruled that Seitman was entitled to prejudgment interest. However, the court did accept Reynolds' argument that the jury had awarded Seitman a double recovery for lost profits. Accordingly, it ordered a remittitur in the amount of $493,150, to which Seitman agreed.
 
 II.
 
 9
 Reynolds raises several issues on appeal. First, it challenges the trial court's instructions to the jury regarding Seitman's obligation under the contract to perform in good faith. Specifically, Reynolds argues that the court failed adequately to instruct the jury that Reynolds could not be liable for breach of contract if Seitman had breached its own duty under the contract to perform in good faith.
 
 
 10
 As a preliminary matter, we must determine whether Reynolds has preserved this issue for appellate review. This determination is governed by Fed.R.Civ.P. 51, which provides in pertinent part as follows:
 
 
 11
 No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of objection.
 
 
 12
 Reynolds' counsel failed to object to the court's instructions after they were read to the jury. Under Rule 51, such failure to object ordinarily results in a procedural default, barring the appellant from challenging the trial court's instructions on appeal. See Osterneck v. E.T. Barwick Indus., 825 F.2d 1521, 1533 (11th Cir.1987). In this case, however, Reynolds' counsel had earlier objected to the instructions at a charge conference between the judge and the parties. After reviewing the transcript of the charge conference, we are satisfied that the judge was sufficiently apprised of the grounds for Reynolds' objection and therefore had ample opportunity to revise the instructions so as to correct any error he perceived.[3] Because Reynolds thus complied with Rule 51's requirement that an adequate objection be made "before the jury retires," we hold that appellate review of the error assigned is not barred by procedural default.
 
 
 13
 The two instructions Reynolds challenges read as follows:
 
 
 14
 Instruction 12: It is a basic principle of contract law that a party who enters into a contract is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement. An obligation of good faith may be breached where a contract is terminated under circumstances that the terminating party knows will be oppressive, when it will frustrate expectations reasonably held, and when it will impose substantial losses upon the other party. If you find that R.J. Reynolds Tobacco Company terminated its performance of the contract under circumstances it knew would be oppressive to Seitman, then you may find that R.J. Reynolds breached its duty to Seitman to act in good faith.
 
 
 15
 Instruction 9: A breach of contract is a failure, without justification, to perform all or any part of what is promised in a contract. So, if you find that it is more likely than not that R.J. Reynolds terminated the contract in violation of its terms and without justification, then you may find that R.J. Reynolds breached its contract with Seitman.
 
 
 16
 Reynolds argues that Instruction 12 improperly suggests that only Reynolds, and not both Reynolds and Seitman, had a duty of good faith performance. Reynolds reasons that the jury was therefore improperly precluded from considering whether Reynolds' termination was justified by a breach of that duty by Seitman.
 
 
 17
 We find this argument to be without merit. The standard of review applicable to alleged errors in jury instructions is whether the court's charge, "considered as a whole, sufficiently instruct[s] the jury so that the jurors understand the issues involved and are not misled." Persaplastic, C.A. v. Cincinnati Milacron Co., 750 F.2d 1516, 1525 (11th Cir. July 1985). Reversal is warranted only if we are left with "a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." Johnson v. Bryant, 671 F.2d 1276, 1280 (11th Cir.1982) (quoting Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1372 (5th Cir.1981)). Here, any misleading impression created by the language in the third sentence of Instruction 12 was rectified by the statement in Instruction 9 that the jury would have to find that Reynolds terminated the contract "without justification." This statement, in conjunction with the general statement in Instruction 12 concerning the obligation of parties to a contract to perform in good faith, adequately informed the jury that Reynolds could not be liable for wrongful termination if the termination had followed a failure by Seitman to perform in good faith its obligations under the contract. We are therefore satisfied that the jury was not misled with respect to this particular point.
 
 
 18
 Reynolds next argues that the evidence presented at trial was insufficient to support a finding that Seitman had performed its contractual obligations, and that the district court therefore improperly denied its motion for a judgment notwithstanding the verdict. Under Fed.R.Civ.P. 50(b), "a motion for a judgment notwithstanding the verdict will not lie unless it was preceded by a motion for a directed verdict made at the close of all the evidence." Fed.R.Civ.P. 50(b) advisory note. Although Reynolds moved for a directed verdict at the close of Seitman's case, it failed to renew the motion at the close of its own case. A defendant's motion for a directed verdict at the close of the plaintiff's case will not suffice unless it is renewed at the close of all the evidence. See United States for Use and Benefit of Roper, IBG v. Reisz, 718 F.2d 1004, 1007 (11th Cir.1983); Special Promotions, Inc. v. Southwest Photos, Ltd., 559 F.2d 430, 432 (5th Cir.1977).[4] Therefore, the district court had no authority to entertain Reynolds' motion for a judgment notwithstanding the verdict, and we are foreclosed from deciding whether the evidence was sufficient to support the verdict.
 
 
 19
 Reynolds' failure to make a timely motion for a directed verdict does not, however, foreclose us from reviewing the district court's denial of Reynolds' motion for a new trial. See Roper, IBG, 718 F.2d at 1007; Special Promotions, 559 F.2d at 432. In its motion for a new trial, Reynolds argued that the district court erred as a matter of law in instructing the jury that it could award Seitman the value of its business. A claim that the trial court submitted to the jury an issue not proper for its consideration may be sufficient to warrant a new trial, provided the party assigning error made a proper and timely objection at trial. See Roper, IBG, 718 F.2d at 1007. Since Reynolds did object at the charge conference to the instruction concerning damages for the value of Seitman's business,[5] that issue is properly preserved for appellate review. See id.
 
 
 20
 Applying North Carolina law,[6] we hold, as a matter of law, that the district court erred in instructing the jury that it could award damages for the value of Seitman's business. There can be no question that, under the terms of the contract, Reynolds could terminate the contract with respect to all future publishing cycles provided it gave Seitman notice before March 1, 1985. Cf. General Tire & Rubber Co. v. Distributors, Inc., 253 N.C. 459, 117 S.E.2d 479 (1960) (absolute right to terminate may be freely exercised); City of Gastonia v. Duke Power Co., 19 N.C.App. 315, 199 S.E.2d 27 (same), cert. denied, 284 N.C. 252, 200 S.E.2d 652 (1973). Reynolds gave Seitman notice on December 13, 1984; it can therefore, at most, be liable only for the profits Seitman lost over the remainder of the 1984-85 publishing cycle plus close-down costs.[7]
 
 
 21
 Where, as here, a trial court has submitted to the jury an issue not proper for its consideration, we ordinarily order a new trial. We need not order a new trial in this case, however, because we can readily isolate the portion of the jury's verdict that is due to the district court's error. The district judge, in his order denying Reynolds' posttrial motions, specifically found that
 
 
 22
 [w]hen the verdict ... is broken down along the lines of the Plaintiff's testimony and the closing arguments by the parties, it is clear that the jury awarded:
 
 
 23
 1. $493,150 for lost profits
 2. $1,233,375 for the value of the Plaintiff's business
 3. $105,000 for close-down costs.
 
 
 24
 Thus, resort to a new trial is not necessary in order to determine what portion of the verdict is allocable to permissible items of damages. In accordance with our holding above, we direct the district court to amend the final judgment by subtracting that portion of the verdict allocable to business value, leaving intact that portion allocable to lost profits and close-down costs.
 
 III.
 
 25
 Finally, Reynolds argues that the district court improperly awarded prejudgment interest. The applicable North Carolina statute provided as follows:
 
 
 26
 [A]ll sums of money due by contract of any kind, excepting money due on penal bonds, shall bear interest, and when a jury shall render a verdict therefor they shall distinguish the principal from the sum allowed as interest; and the principal sum due on all such contracts shall bear interest from the time of rendering judgment thereon until it is paid and satisfied.
 
 N.C.Gen.Stat. Sec. 24-5 (amended 1985).[8]
 
 27
 The North Carolina Supreme Court has stated that "[w]hen the amount of damages in a breach of contract action is ascertained from the contract itself, or from relevant evidence, or from both, interest should be allowed from the date of the breach." General Metals, Inc. v. Truitt Mfg. Co., 259 N.C. 709, 131 S.E.2d 360, 363 (1963). Thus, although the amount of the claim need not necessarily be liquidated, see, e.g., Dailey v. Integon Gen. Ins. Corp., 75 N.C.App. 387, 331 S.E.2d 148, 159 (1985), it must ordinarily be "obvious or easily ascertainable from the contract." Lazenby v. Godwin, 60 N.C.App. 504, 299 S.E.2d 288, 291 (1983). See also Harris & Harris Constr. Co. v. Crain & Denbo, Inc., 256 N.C. 110, 123 S.E.2d 590, 602 (1962) (no prejudgment interest where the damages sought were unliquidated and could not be readily "ascertained by mere computation, or by a legal or recognized standard").
 
 
 28
 In this case, it is not apparent that the amount of the jury verdict could have been ascertained with any degree of specificity before the judgment was rendered. With respect to the lost profits component of the verdict, we have difficulty identifying a basis, either in the contract or elsewhere, whereby Reynolds could reasonably be expected to have ascertained beforehand the amount for which it would be held liable. Likewise, it is not apparent that the close-down costs component of the verdict was readily ascertainable. We therefore hold that the district court erred in awarding prejudgment interest.[9]
 
 IV.
 
 29
 To summarize, we affirm the district court's denial of Reynolds' motion for a judgment notwithstanding the verdict. We reverse the district court's denial of Reynolds' motion for a new trial, but we do not order a new trial because the district court can correct its error by striking the business value component of the verdict. Finally, we reverse the district court's order granting Seitman's request for prejudgment interest.
 
 
 30
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 *
 Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 Section 1332 provides as follows:
 (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between--
 (1) citizens of different States;
 ....
 
 
 [2]
 The contract provided that its terms were to be governed by the law of North Carolina, and the parties have stipulated that the contract is to be governed by that law
 
 
 [3]
 At the charge conference, Reynolds' counsel made the following statement:
 On number 12, your Honor, first I object to the instruction because I don't believe again, that the testimony in this case warrants this instruction, nor is it even-handed because it simply suggests that the only one, should such an instruction be applicable to be given, it should only be given in the context that Reynolds performs; and as you Honor has well seen, it is our contention that there was a breach of good faith on the part of the Plaintiff here in not doing what the contract required him to do; so it is not an even-handed instruction[], and suggests the only one who can be found guilty of a breach of good faith was Reynolds, and I don't think that is the testimony, and therefore, I object to the charge.
 
 
 [4]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981
 
 
 [5]
 The relevant instruction read as follows:
 If you find that R.J. Reynolds failed to exercise good faith in performing its obligation under the contract with Mark Seitman & Associates, and that such failure deprived Seitman of an opportunity to sell its publishing business to another buyer as a going concern, you may award as damages the value of the publishing business as a going concern at the time that the contract was terminated.
 Although he did so inartfully, Reynolds' counsel did take issue with this instruction at the charge conference:
 Musn't [sic] there be language, if it is going to be used at all, of extraordinary loss, because most breaches of contract which call for the standard measure of damage impose substantial damages. I don't think there is anything that takes this out of the ordinary run of the mill breach of contract that would warrant this more stringent standard to which Reynolds, and Reynolds alone is being exposed.
 Additionally, at the commencement of the trial, the court granted Reynolds' request for a standing objection "to the testimony that relates to ... anything other than the standard form of damages, i.e., you put the party [claiming] breach in the position which he would have been had the contract been performed."
 
 
 [6]
 See supra note 2
 
 
 [7]
 In denying Reynolds' motion for a new trial, the district court stated that a plaintiff such as Seitman may recover for the entire value of its business under "limited circumstances." In support of this proposition, the court cited United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985 (4th Cir.1980), cert. denied, 454 U.S. 1054, 102 S.Ct. 599, 70 L.Ed.2d 590 (1981), a breach of contract case in which the Fourth Circuit, applying North Carolina law, upheld a jury verdict awarding the plaintiff compensation for the loss of his business as a going concern. We find United Roasters to be inapposite. The defendant in that case had contractually agreed to manufacture and distribute a food product developed by the plaintiff. The defendant terminated the contract during a period in which its right to do so was unqualified. However, during the several months preceding the termination, the defendant had ceased production of the product, stopped substantially all advertisement for the product, transferred the product manager to another project, and sold its entire inventory. Id. at 987. Furthermore, upon terminating the contract, the defendant refused to return the plaintiff's assets, including its production facilities. In effect, as the Fourth Circuit noted, the defendant "deprived the plaintiff of an opportunity to sell the business as a going concern or to develop it on its own." Id. at 993. United Roasters is plainly distinguishable from this case. Seitman cannot claim that Reynolds somehow deprived it of an opportunity to sell its business; Seitman's business, as such, was solely a creature of the contract with Reynolds. The business therefore had value only to the extent that Reynolds elected to renew the contract, which it chose not to do
 
 
 [8]
 This provision was amended effective October 1, 1985. The present action was commenced on April 2, 1985. The act amending section 24-5 provides that the amendment does not affect pending litigation. See 1985 N.C.Sess.Laws, ch. 214, Sec. 2
 
 
 [9]
 We do not believe, as Seitman apparently does, that North Carolina law requires prejudgment interest whenever the amount of the verdict is supported by evidence presented at trial. All jury verdicts are presumed to be supported by the evidence