**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Charles Wayne SHORES,
Defendant–Appellant.**

**No. 90–3462.**

United States Court of Appeals,
Eleventh Circuit.

July 22, 1992.

---

**16.** *Olden v. Kentucky*, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988).

**17.** *Id.* at 231, 109 S.Ct. at 483.

Andrea Wilson, Asst. Federal Public Defender, Tampa, Fla., for defendant-appellant.

Monte C. Richardson, Tampa, Fla., for plaintiff-appellee.

Before ANDERSON and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

PER CURIAM:

Following a jury trial, Charles Wayne Shores was convicted of attempted bank robbery. 18 U.S.C. § 2113(a). He was sentenced to imprisonment for ninety-seven months, to be followed by three years of supervised release. Shores appeals both his conviction and sentence. We affirm his conviction, but vacate his sentence and remand for resentencing.

## I. FACTS AND PROCEDURAL HISTORY

In October 1989, Shores lived in St. Petersburg, Florida. During that time, he met Robert Lyle, who unbeknownst to Shores, was a confidential informant for the police. The two men began to plan a bank robbery. Lyle introduced Shores to police detective Leo Cordero as if Cordero were one of Lyle's drug dealing friends. The three subsequently agreed to rob a bank.

In preparation for the robbery, Shores purchased a toy gun at a local K–Mart. On the morning of November 3, 1989, the three men set out to rob a bank. Upon arriving at the Florida Federal Savings Bank, Shores and Lyle exited the vehicle and walked toward the main entrance. The police intercepted and arrested Shores within ten feet of the bank entrance. The police retrieved the toy gun from Shores's right pocket. The toy gun was never drawn, nor did Shores ever go inside the bank.

Following his arrest, Shores initially told police that his name was Chuck Richards. However, Shores revealed his true identity a short time after his arrest, prior to his booking.

At trial, the Government offered into evidence an admission by Shores that he had previously robbed a bank. Evidence offered by the Government also showed that Shores had admitted being knowledgeable about bank security procedures and internal operations, as well as the use of dye-packs. Shores's admission about the previous bank robbery was admitted without objection. Shores did object to the court's jury instruction on how to consider the evidence.

Shores also objected to the Pre-sentencing Investigation Report (PSI), which the court relied on for sentencing. Specifically, Shores challenged the court's (1) imposition of a three-level increase in his base offense level for use of a dangerous weapon; (2) assessment of a two-level increase for obstruction of justice based on Shores's use of a false name; and (3) denial of Shores's request for a two-level reduction due to his acceptance of responsibility.

## II. ISSUES

(1) Whether the district court erred in instructing the jury on how to consider similar act evidence under Rule 404(b) of the Federal Rules of Evidence.

(2) Whether the district court erred in assessing Shores a three-level adjustment for possession of a dangerous weapon.

(3) Whether the district court erred in assessing Shores a two-level adjustment for obstruction of justice.

(4) Whether the district court erred in refusing to credit Shores a two-level reduction for acceptance of responsibility.

## III. STANDARDS OF REVIEW

A district court's decision to admit similar act evidence will be disturbed on review only if the decision was a clear abuse of discretion. *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir.1983); *United States v. Edwards*, 696 F.2d 1277,

1280 (11th Cir.), *cert. denied,* 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983).

■ Alleged errors in a jury instruction are reviewed by this court to determine whether the court's charge, " 'considered as a whole, sufficiently instructs the jury so that the jurors understand the issues involved and are not misled.' " *Mark Seitman & Associates, Inc. v. R.J. Reynolds Tobacco Co.,* 837 F.2d 1527, 1531 (11th Cir.1988) (citation omitted); *Johns v. Jarrard,* 927 F.2d 551, 554 (11th Cir.1991).

■ In reviewing a district court's application of the sentencing guidelines, this court examines findings of fact under a clearly erroneous standard. 18 U.S.C. § 3742(e); *United States v. Forbes,* 888 F.2d 752, 754 (11th Cir.1989). Questions of law, however, are reviewed by this court *de novo.*

## IV. DISCUSSION

### 1. Similar Act Evidence Instruction

■ Shores contends that the district court erred in admitting statements made by him to the effect that he had previously robbed a bank. He argues that allowing the statements into evidence violates Rule 404(b) and *United States v. Beechum,* 582 F.2d 898 (5th Cir.1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).[1]

Shores did not object to this evidence when it was offered; rather, he objected to the jury instruction. Yet on appeal he argues that the court erred in both admitting the evidence and in instructing the jury on how to consider it. We will not become entangled in procedural issues, however, because the evidence was properly admitted and the jury was properly instructed on how to consider it.

Rule 404(b) provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b).

In *United States v. Beechum,* the former Fifth Circuit interpreted Rule 404(b) to require that the evidence be (1) "relevant to an issue other than the defendant's character" and (2) "possess probative value that is not substantially outweighed by its undue prejudice." *Beechum,* 582 F.2d at 911.

■ We, in turn, have interpreted *Beechum's* first prong as also requiring "a finding of sufficient evidence to prove that the defendant committed the offense." *Edwards,* 696 F.2d at 1280. In other words, *Beechum* requires a finding that the jury *could* find that the defendant committed the offense. *Id.*

Shores argues that the lack of detail concerning the alleged prior robbery, coupled with the fact that there was no corroboration of the event, renders the statements insufficient under *Beechum.* We believe, however, that the jury *could* find that Shores committed the robbery based solely on his admission, despite both the lack of detail present in the admission and absence of corroboration. *See United States v. Pollard,* 509 F.2d 601, 604 (5th Cir.), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2419, 44 L.Ed.2d 681 (1975); *Edwards,* 696 F.2d at 1280.

A juror is free to disbelieve the proffered testimony based on its lack of detail and corroboration; however, this does not mean that there is not sufficient evidence for a reasonable juror to find that the defendant *could* have indeed committed the offense. Furthermore, in this case Shores admitted, among other things, knowledge about how to rob a bank, the internal operation of banks, and how a dye-pack is put together. R–66–15. A juror could certainly infer from all the evidence presented that Shores *could* have committed the prior robbery that he had previously admitted to others.

---

**1.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

■ As for the court's instruction to the jury, the court explained that the similar act evidence was admitted solely for the purpose of proving Shores's state of mind, not to prove that Shores committed the charged bank robbery. This instruction was proper.

In summary, the statements were relevant to an issue other than character. The district court did not err in finding that the evidence's probative value substantially outweighed its prejudicial value. And, there was sufficient evidence to prove that Shores committed the prior offense. Accordingly, we hold that it was not an abuse of discretion for the district court to admit the statements under Rule 404(b), and further, to properly instruct the jury on how to consider the evidence.

### 2. Possession of a Dangerous Weapon

■ Shores challenges the court's assessment of a three-level increase in his base offense score under the sentencing guidelines for possession of a dangerous weapon.

Section 2B3.1(b)(2)(C) of the sentencing guidelines provides for a three-level increase "if a dangerous weapon (including a firearm) was brandished, displayed, or possessed." United States Sentencing Commission, *Guidelines Manual*, § 2B3.1 (Nov.1989). Shores directs our attention to § 1B1.1's commentary which further provides that "[w]here an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon." U.S.S.G. § 1B1.1, comment. (n. 1(d)).

Shores contends that possession of a toy gun that is not displayed does not satisfy § 2B3.1's language. He argues that a toy gun is not *"per se* dangerous in the way that a genuine gun is." Brief for Appellant at 14. It only becomes dangerous when other people become aware of it. He concludes, therefore, that his possession of the toy gun, which never "appeared" to any one, cannot be considered possession of a dangerous weapon under the guidelines. We disagree.

Shores concedes that a toy gun can be considered a dangerous weapon under § 2B3.1 if displayed or brandished. *See United States v. Faulkner,* 934 F.2d 190, 196 (9th Cir.1991) ("The current Guidelines make clear ... that a toy gun is a 'dangerous weapon,' the use of which requires enhancement under the robbery guideline."); *see also United States v. Medved,* 905 F.2d 935, 939 (6th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 997, 112 L.Ed.2d 1080 (1991). Rather, Shores argues a much narrower issue concerning construction: Assuming that a court can characterize a toy gun as a dangerous weapon if displayed or brandished, it cannot so characterize a toy gun if it is merely possessed.

There are good reasons for punishing a defendant who carries a toy gun during the commission of a bank robbery. First, possession of a toy gun, by itself, can play an integral part in the crime. *United States v. Martinez–Jimenez,* 864 F.2d 664, 667 (9th Cir.), *cert. denied,* 489 U.S. 1099, 109 S.Ct. 1576, 103 L.Ed.2d 942 (1989). Second, possession evidences an apparent ability to use a weapon. One of the reasons why possession of an unloaded gun is considered possession of a dangerous weapon is its potential to be dangerous. For example, should the otherwise non-lethal, unloaded gun be detected, others might react to the sight of it with the use of deadly force. A toy gun "merely possessed" can present a similar risk of disaster.

Although at first blush the use of "appeared" in the commentary seems to imply that the weapon must be displayed, this inference is dispelled by the further clarifying words of "brandished, displayed *or possessed."* The only way to give meaning to both "appeared" and "possessed" is to interpret "appeared" objectively for cases involving possession. Thus, if a court finds that a particular toy gun is possessed by a defendant and "appears" to be a dangerous weapon in the sense of its potential if displayed, then the toy gun would satisfy application note 1(d) of § 1B1.1 and § 2B3.1, even though it was never actually displayed. To hold otherwise would be to

read "possession" right out of the application note.

The record in this case reveals that the toy gun possessed by Shores was a look-alike nine millimeter pistol, purchased because Shores thought it looked more authentic than any other available at K–Mart. The court found that Shores possessed the simulated weapon, and was prepared to use it, but was stopped before he could enter the bank.

The district court's finding that Shores possessed a dangerous weapon within the meaning of the guidelines is not clearly erroneous.

### 3. Obstruction of Justice

At the time of sentencing, § 3C1.1 provided that "[i]f the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1.

■ The court assessed a two-level enhancement based on Shores's use of a false name when he was first arrested. A later clarifying amendment[2] to § 3C1.1 reveals that this finding alone is not sufficient to invoke § 3C1.1. As the commentary now reads, "providing a false name ... at arrest [does not warrant application of this enhancement] except where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense." U.S.S.G. § 3C1.1, comment, (n. 4(a)).

■ Shortly after he was arrested, and prior to booking, Shores gave police his real name. The Government has not articulated any evidentiary basis for finding that Shores's initial use of a false name resulted in a significant hindrance to the investigation and we can find none in the record. We therefore hold that Shores's sentence should not have been enhanced under § 3C1.1.

2. This amendment became effective after Shores's sentencing. Subsequent clarifying amendments to the guidelines, however, may be referred to in interpreting a guideline provision.

### 4. Acceptance of Responsibility

■ Shores argues that the court erred in not reducing his offense level by two levels in light of his acceptance of responsibility. Shores contends that there is no factual basis in the record for the denial of his request. However, this court has held that the burden of proving entitlement to a reduction under this section is on the defendant. *United States v. Wallace,* 904 F.2d 603, 604 (11th Cir.1990).

■ Shores points to his admission of involvement in the crime. His admission, however, does not necessarily amount to an "affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1. Moreover, Shores continued to blame his involvement on others. Shores does not point out anything else in the record indicating his acceptance of responsibility.

"The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility.... [Her] determination ... is entitled to great deference on review and should not be disturbed unless it is without foundation." U.S.S.G. § 3E1.1, comment. (n. 5); *United States v. Campbell,* 888 F.2d 76, 78 (11th Cir.1989), *cert. denied,* 494 U.S. 1032, 110 S.Ct. 1484, 108 L.Ed.2d 620 (1990). The district court's finding that Shores failed to accept responsibility is not clearly erroneous.

### V. CONCLUSION

There being no error in the court's admission of similar act evidence, Shores conviction is AFFIRMED. We find no error in the court's assessment of a three-level adjustment for possession of a dangerous weapon, nor do we find error in the court's refusal to credit Shores a two-level reduction for acceptance of responsibility. The court's two-level enhancement for obstruction, however, was inappropriate. Accordingly, we VACATE Shores's sentence and REMAND for resentencing.

*United States v. Scroggins,* 880 F.2d 1204 (11th Cir.1989), *cert. denied,* 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990); *United States v. Howard,* 923 F.2d 1500, 1503–05 (11th Cir.1991).

AFFIRMED in part; VACATED and RE-MANDED in part.

RONEY, Senior Circuit Judge, dissenting in part:

I concur in all of the court's opinion except the decision that the concealed possession of the toy gun requires sentence enhancement under U.S.S.G. § 2B3.1(b)(2)(C) (Nov.1989). The commentary defining a dangerous weapon provides:

"Dangerous weapon" means an instrument capable of inflicting death or serious bodily injury. Where an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon.

U.S.S.G. § 1B1.1 comment. (n. 1(d)).

In order to reach its decision, the Court converts the word "appeared" in the above definition to "appears," arguing that to do otherwise would read "possession" right out of the application note set forth in the commentary.

This reasoning, however, simply reads out of the commentary the words "was brandished, displayed, or possessed." The Court's converting the word "appeared" to "appears" makes the commentary effectively read: "Where an object appears to be a dangerous weapon, treat the object as a dangerous weapon." The words "brandished, displayed, or possessed" become superfluous because the guideline itself picks up the possession once the object is determined to be a dangerous weapon: "if a dangerous weapon was brandished, displayed, or possessed, increase by 3 levels." U.S.S.G. § 2B3.1(b)(2)(C) (Nov.1989).

If the word "appeared" is construed as meaning that the object which is not dangerous but looks dangerous must have made an appearance during the crime, however it is brandished, displayed, or possessed, then those words do not lose all significance in the commentary. It is possible that the toy gun could have appeared to be dangerous at the time of the crime without being brandished or displayed but merely by being possessed by the defendant. Concealed possession of a toy gun, however, does not satisfy the requirement that the object *appeared* to be a dangerous weapon. If the Sentencing Commission had intended that an object which *appears objectively* to be dangerous should be treated in all respects as if it were a dangerous weapon, the commentary could have easily so provided.

All of the cases the Court and the Government cite involve situations where the crime victims saw the object which appeared to be dangerous. *See United States v. Faulkner*, 934 F.2d 190 (9th Cir. 1991) (defendant performed all of his charged robberies with aid of toy gun); *United States v. Medved*, 905 F.2d 935 (6th Cir.1990), *cert. denied,* ── U.S. ──, 111 S.Ct. 997, 112 L.Ed.2d 1080 (1991) (defendant pointing toy gun at bank tellers demanded money); *United States v. Martinez–Jimenez*, 864 F.2d 664 (9th Cir.), *cert. denied,* 489 U.S. 1099, 109 S.Ct. 1576, 103 L.Ed.2d 942 (1989) (during bank robbery defendant held toy gun downward by his side which eyewitnesses thought was handgun); *United States v. Mahler*, 891 F.2d 75 (4th Cir.1989) (defendant waved replica of handgun at bank tellers and employees during robbery). No case has been called to our attention where the non-dangerous but appearing-to-be-dangerous object was concealed and not known to the victims of the criminal conduct.

Although, as the Court points out, it does seem that Shores would have shown the toy gun had he not been stopped before he could enter the bank, that fact should not subject him to a sentence enhancement that does not specifically cover his situation. The question for this Court is not whether it might be appropriate to enhance Shores' sentence in this case, but whether the Guidelines as interpreted in the commentary provide for enhancement.