[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 6 2000
THOMAS K. KAHN
CLERK

No. 99-2060

D. C. Docket No. 98-00080-3-CR-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARVIN LYNE BATES,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Florida

**(June 6, 2000)**

Before DUBINA and BLACK , Circuit Judges, and BECHTLE\*, Senior District
Judge.

_____

\*Honorable Louis C. Bechtle, Senior U.S. District Judge for the Eastern District of
Pennsylvania, sitting by designation.

DUBINA, Circuit Judge:

Marvin Lyne Bates ("Bates") pled guilty to bank robbery, in violation of 18 U.S.C. § 2113(a). The district court sentenced Bates to 78 months imprisonment, imposed a three-level enhancement to his base offense level for "brandish[ing], display[ing], or possess[ing]" a dangerous weapon, pursuant to U.S.S.G. § 2B3.1(b)(2)(E), and a two-level enhancement for carjacking, pursuant to U.S.S.G. § 2B3.1(b)(5). Bates contends that the district court erred in applying the three-level enhancement because he did not possess a dangerous weapon when he committed the bank robbery. Although Bates was unarmed, he simulated the possession of a dangerous weapon by reaching into his pants waist band during the bank robbery. Therefore, under the unique circumstances of this case, we affirm the district court's imposition of the three-level enhancement, pursuant to U.S.S.G. § 2B3.1(b)(2)(E). We also affirm the district court's imposition of the two-level enhancement, pursuant to U.S.S.G. § 2B3.1(b)(5), because, under the facts of this case, Bates attempted to take a motor vehicle from a person by force and violence or by intimidation. We remand the case to the district court, however, to correct the written judgment to accord with the oral pronouncement of sentence.

## I. BACKGROUND

2

Bates entered a branch of SouthTrust Bank in Pensacola, Florida, to cash a blank check. When the teller informed Bates that she was unable to cash the check, Bates gave her a yellow plastic bag and said, according to the teller, "give me your money." (PSI ¶ 5). The teller began to pull out her "bait bills" when she heard Bates say, "Listen lady, don't mess with me; don't make me hurt you." (*Id.* ¶ 6). The teller then observed Bates reach with his right hand into his pants waist band area, clearly implying and simulating the presence of a weapon. The teller stated that she was fearful that Bates was reaching for a gun, so she did not provide the "bait bills." The teller handed Bates an undisclosed amount of money and Bates departed the bank. (*Id.*). The teller's supervisor, who witnessed the robbery, reported that Bates looked at the victim teller and said, "Lady, are you crazy," then he reached into his pocket and uttered something like, "I'll kill you." (*Id.* ¶ 7). The bank's video camera recorded the robbery and confirmed the teller's account of the crime.

The teller's supervisor saw Bates leaving and reported a description of the getaway car and its license plate to the police. Police discovered the car at a nearby convenience store and arrested Bates as he ran into the backyard of a neighboring home. (*Id.* ¶ 9, 10). The resident of that home later found the entire

proceeds of the robbery hidden in her backyard and reported this finding to the authorities.

During the investigation, Charles Parazine ("Parazine") reported to police that on the day of the bank robbery, while he sat on his front porch, Bates ran onto his porch and demanded his car keys. (*Id.* ¶ 12). When Parazine told Bates that his keys were in his house, Bates grabbed him by the arm and forced him inside. Parazine led Bates to a dresser and pulled out a handgun. Bates ran out of the house. (*Id.*).

Following his guilty plea, the district court sentenced Bates. During the sentencing, the district court imposed a three-level enhancement for possession of a dangerous weapon pursuant to U.S.S.G. § 2B3.1(b)(2)(E), and an additional two-level enhancement for carjacking pursuant to § 2B3.1(b)(5). Bates objected to both enhancements, but the district court overruled the objections and sentenced Bates to the upper end of the guideline range – 78 months. (R1-20-15).

## II. DISCUSSION

*A. Section 2B3.1(b)(2)(E) Enhancement*

Bates objected to the Presentence Investigation Report ("PSI") recommending a three-level enhancement for possession of a dangerous weapon

4

during the commission of a robbery pursuant to § 2B3.1(b)(2)(E). He conceded that a two-level enhancement pursuant to § 2B3.1(b)(2)(F) would be appropriate since he made a threat to the teller, but argued that subsection (E) did not apply because he did not brandish, display, or possess a weapon or an object that could be perceived as a weapon. The government responded that no difference exists between simulating a weapon and simulating the presence of a weapon because each creates the risk that law enforcement will respond with violence, thereby increasing the risk to everyone involved. The district court overruled Bates's objection, finding that "the purpose of that enhancement is the threat, the indication of a weapon." (R3-8).

Bates challenges the district court's ruling on appeal, arguing that the requirement for the dangerous weapon enhancement cannot be satisfied without the presence of an actual weapon or an object that can be perceived as a weapon. We disagree.

Section 2B3.1(b)(2)(E) of the sentencing guidelines provides that during the commission of a bank robbery, the district court should enhance the base offense level "if a dangerous weapon was brandished, displayed, or possessed." The commentary provides that "[w]hen an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous

5

weapon for the purposes of subsection (b)(2)(E)." U.S.S.G. § 2B3.1, comment. (n.2); *see United States v. Miller*, ___ F.3d ___, ___ (No. 99-12886, March 13, 2000, 11th Cir. 2000), slip op. at 1596 ("Based on the plain language of this commentary, we have recognized that objects which appear to be dangerous weapons should be treated for sentencing purposes as if they actually were dangerous weapons.").

In this circuit, the critical factor for the application of § 2B3.1(b)(2)(E) is whether the defendant intended the *appearance* of a dangerous weapon. *See United States v. Woods*, 127 F.2d 990, 993 (11th Cir. 1997); *United States v. Vincent*, 121 F.3d 1451 (11th Cir. 1997). For example, in *Vincent*, we concluded that a district court properly enhanced a sentence pursuant to subsection (E) where the "victim of a robbery was intimidated by the placing of a hidden object in her side." 121 F.3d at 1452. We reached that conclusion even though the victim did not see the object possessed by the defendant. *See id.* at 1455. In arriving at that decision, we agreed with the Third Circuit's rationale in *United States v. Dixon*, 982 F.2d 116, 122 (3rd Cir. 1992), "that the danger of a violent response that can flow from pretending to brandish, display, or possess a simulated weapon in perpetrating a robbery is just as real whether the object is a toy gun, or a concealed body part." *Vincent,* 121 F.3d at 1455. Therefore, we held that a three-level

6

enhancement was justified "by the threat of a violent or deadly confrontation that can be precipitated by simulating the possession of a dangerous weapon." *Id.*

Similarly, in *United States v. Shores*, 966 F.2d 1383 (11th Cir. 1992), we stated that possession of a toy gun during the commission of a bank robbery constitutes "brandish[ing], display[ing], or possess[ing]" a dangerous weapon under the sentencing guidelines, as long as the toy gun "'appears' to be a dangerous weapon." *Id.* at 1387. We stated that possession of a toy gun, just as an unloaded gun, is considered possession of a dangerous weapon because of its potential to be dangerous." *Id.* If someone detects a toy gun, he may react to it with deadly force. *Id.* Thus, in *Shores*, as well as in *Vincent* and *Woods*, we focused on the *appearance* of a dangerous weapon as well as the potential dangerous consequences of such appearance.

Applying our precedents to the present case, we conclude that the district court correctly applied the three-level enhancement. Bates simulated possession of what *appeared* to be a dangerous weapon. When Bates reached into his pants waist band, the victim teller perceived Bates to be reaching for a weapon. *See Woods*, 127 F.3d at 993 (imposing subsection (E) enhancement based on the victim's perception that the defendant possessed a gun during the commission of the robbery). Even though the victim teller never saw a dangerous object, the

7

district court's imposition of the three-level enhancement is proper because the definition of "possess" does not require an object to be visible in order to be possessed. *See Vincent*, 121 F.3d at 1455 (citing *United States v. Johnson*, 37 F.3d 1352, 1354 (9th Cir. 1994)). Because Bates's hand simulated possession of what *appeared* to be a dangerous weapon, and the victim teller perceived Bates to possess a dangerous weapon, we affirm the district court's imposition of the three-level enhancement pursuant to § 2B3.1(b)(2)(E).[1]

*B. Section 2B3.1(b)(5) Enhancement*

Bates objects to the district court's imposition of the two-level enhancement for carjacking during the commission of a robbery pursuant to § 2B3.1(b)(5). Bates contends that the sentencing guideline commentary "is inconsistent with the federal statute which it seeks to implement" and that the "guidelines Commission has neglected to amend the commentary to be consistent with the statutory amendment adding specific intent as an element." (Appellant's Brief at 22). Relying on *Stinson v. United States*, 508 U.S. 36, 38 (1993), which held that

---

[1] Bates also makes another unpersuasive argument. He claims that his action of placing his hand in his pants waist band was a "gesture," as noted in the commentary to U.S.S.G. § 2B3.1(b)(2)(F). He contends that if this court upholds his enhancement under subsection (E), the "gesturing" would be written out of subsection (F), thereby nullifying that subsection. We find the "gesturing" contemplated by subsection (F) distinct from Bates's "gesturing." The "gesturing" contemplated in subsection (F) in no way simulates the possession of a dangerous weapon as required under subsection (E). *See* U.S.S.G. § 2B3.1, comment. (n.6).

8

"commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline," Bates argues that the commentary lacks authority because it is inconsistent with the federal statute. Therefore, he asserts that the district court erred in imposing the two-level carjacking enhancement.[2]

At the time guideline section 2B3.1(b)(5) was written, the statute criminalizing carjacking defined the crime as

> [while] possessing a firearm as defined by section 921 of this title, tak[ing] a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempt[ing] to do so.

18 U.S.C. § 2119 (1992). With that basis, the guidelines defined carjacking as the "taking or attempted taking of a motor vehicle from the person or presence of another by force and violence or by intimidation." U.S.S.G. § 2B3.1(b)(5), comment. (n.1). In 1994, Congress amended 18 U.S.C. § 2119 by substituting "with the intent to cause death or serious bodily harm" for "possessing a firearm as defined in section 921 of this title." Violent Crime Control & Law Enforcement

---

[2] The government responds that Bates abandoned this argument because he failed to address it at the sentencing hearing. Having reviewed the record, we reject this argument.

Act of 1994, Pub. L. No. 103-322, § 60003(a)(14), 108 Stat. 1796, 1970 (1994). The Sentencing Commission has not amended the guideline definition of carjacking to reflect the addition of the specific intent requirement to the statute. *See* U.S.S.G. § 2B3.1(b)(5), comment. (n.1).

In overruling Bates's objection to the enhancement, the district court did not directly rule on the specific intent conflict between the statute and the guideline. We, too, find it unnecessary to discuss the conflict. First, the Sentencing Commission has had ample time to alter the guidelines to comport with the amended statute, but has not changed the guidelines. In contrast, many guideline sections cite to a specific federal statute. *See e.g.,* U.S.S.G. § 2A2.1, comment. (n.2), § 2A3.4, § 2A6.2, comment. (n.1), § 2B3.3, comment. (n.1), § 2L1.2, comment. (n.1), and § 2B3.1(c). Thus, if the Sentencing Commission had intended the definition of carjacking for purposes of U.S.S.G. § 2B3.1 to mirror the statute, it would amend it to refer specifically to the carjacking statute. Second, we note that Bates was not charged under the carjacking statute. Instead, the district court enhanced Bates's sentence for attempting a carjacking during the commission of the bank robbery. *See generally United States v. Morris*, 139 F.3d 582, 584 (8th Cir. 1998) (statute is controlling for the actual offense, but the guidelines commentary controls for the purpose of determining the guideline sentence).

Therefore, it is irrelevant whether a specific intent requirement is necessary because the facts support both the guidelines definition and the statutory definition of carjacking. By demanding the car keys, grabbing Parazine's arm, and forcing him into the house, Bates attempted to take Parazine's car by using force and violence or by intimidation. This satisfies both definitions. Accordingly, for these reasons, we affirm the district court's imposition of the two-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(5).

*C. Supervised Release*

At the sentencing hearing, the district court unambiguously announced Bates's term of supervised release as five years. (R3-13). The written judgment, however, states the term of supervised release as three years. (R1). When a sentence pronounced orally and unambiguously conflicts with the written order of judgment, the oral pronouncement governs. *See United States v. Khoury*, 901 F.2d 975, 977 (11th Cir. 1990). Therefore, we remand to the district court with instructions to correct the written judgment to accord with the oral pronouncement of sentence. *See* Fed. R. Crim. P. 36; *Khoury*, 901 F.2d at 977.

## III. CONCLUSION

We affirm the district court's imposition of the three-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(E), and the two-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(5).  We remand to the district court to correct the written judgment to accord with the oral pronouncement of sentence.

AFFIRMED in part, and REMANDED.

BECHTLE, Senior District Judge, dissenting:

As set forth in the majority opinion, Bates was sentenced to 78 months imprisonment after pleading guilty to bank robbery, in violation of 18 U.S.C. § 2113(a). I join my colleagues in affirming the district court's imposition of the two level enhancement of Bates's sentence pursuant to U.S.S.G. § 2B3.1(b)(5) for carjacking during the commission of a robbery and in remanding the case to the district court to correct the written judgment to accord with the oral pronouncement of sentence. However, I find myself having to disagree with my colleagues regarding the feature of this appeal that addresses the district court's imposition of a three level enhancement of Bates's sentence pursuant to U.S.S.G. § 2B3.1(b)(2)(E).

It is undisputed that Bates should have received at least a two level enhancement of his sentence pursuant to U.S.S.G. § 2B3.1(b)(2)(F) because he made a threat to the bank teller. It is also undisputed that Bates did not have an object in his possession or under his control which was either "brandished, displayed, or possessed." U.S.S.G. § 2B3.1(b)(2)(E). In my view, U.S.S.G. § 2B3.1(b)(2)(E) and the decisions interpreting this section require the presence of some object that can be perceived as a weapon. See United States v. Vincent, 121 F.3d 1451, 1455 (11th Cir. 1997) ("[W]e hold that a 3 level enhancement is proper

13

when a robber uses a finger *or some other hard object* to cause the victim to believe that it is a dangerous weapon.") (emphasis added).

All the decisions relied upon by the majority are cohesive in their application of U.S.S.G. § 2B3.1(b)(2)(E) in that the defendant employed an inanimate object in the commission of the crime. See United States v. Woods, 127 F.3d 990 (11th Cir. 1997) (affirming enhancement where "victim reported having an object placed in her side during the robbery and perceiving that object to be a weapon"); Vincent, 121 F.3d at 1454-55 (same); United States v. Shores, 966 F.2d 1383, 1387-88 (11th Cir. 1992) (affirming enhancement where defendant possessed toy gun) ; United States v. Dixon, 982 F.2d 116, 122 (3d Cir. 1992) (affirming enhancement where defendant used hand covered by towel which appeared to be gun). Recently, this circuit restated the primary importance of an object in imposing an enhancement under U.S.S.G. § 2B3.1(b)(2)(E): "[b]ased on the plain language of this commentary [to the Guideline], we have recognized that *objects* which appear to be dangerous weapons should be treated for sentencing as if they actually were dangerous weapons." United States v. Miller, 206 F.3d 1051, 1052 (11th Cir. 2000) (emphasis added) (citing cases).

The legislature drew the line for the imposition of the enhancement under U.S.S.G. § 2B3.1(b)(2)(E) at the point where the evidence demonstrated that the

14

perpetrator possessed a weapon or an object. Of all the cases that have spoken to this issue, the Third Circuit's decision in United States v. Dixon is the one that goes up to that line but not across it.[1] By upholding the three level enhancement based on the record in this case, the majority crosses that line.[2] The mistake that I think

---

[1] In Dixon, the Third Circuit addressed the argument regarding the requirement of some object in order to impose a three level enhancement under U.S.S.G. § 2B3.1(b)(2)(E):

> Because [Dixon's aider and abettor] did not possess any "object" other than the towel concealing her hand, Dixon asserts that she could not possibly have "brandished, displayed, or possessed" an "object that appeared to be a dangerous weapon." Dixon's argument is unavailing. [Dixon's aider and abettor's] hand is an object. Concealed by the towel and pointed around the bank, it fooled the bank tellers into thinking she had a dangerous weapon. The object that was her hand, together with the object covering it, the towel, appeared to them to be a weapon.

982 F.2d at 122. Unlike the situation in Dixon, there is nothing in the instant record that suggests that when Bates reached into his pants waistband, his pants waistband area objectively appeared to have a weapon or object that appeared to be a weapon stored therein. Rather, the instant record contains only evidence of Bates's reaching into his pants waistband, coupled with the bank teller's subjective belief that Bates was reaching for a gun.

[2] In United States v. Taylor, the defendant handed the bank teller a note stating that this was a holdup and that he had a gun in the waistband of his pants. United States v. Taylor, 960 F.2d 115, 116 (9th Cir. 1992). The defendant pulled up his shirt, revealing a T-shirt. Id. Then, the defendant pulled his T-shirt tightly, such that the teller "saw the clear outline of a gun handle." Id. The Ninth Circuit upheld an enhancement under the Guideline. Id. Taylor is instructive in that it reveals what is missing from the instant record in order to uphold an enhancement under U.S.S.G. § 2B3.1(b)(2)(E). In Taylor, the bank teller viewed the clear outline of an object which appeared to be a gun handle. 960 F.2d at 116. In the instant matter, the bank teller was only "fearful" that Bates was reaching for a gun.

I agree with the majority that where a victim never saw a dangerous object, a three level enhancement may still be imposed because "the definition of 'possess' does not require an object to be visible in order to be possessed." Vincent, 121 F.2d at 1455 (citing United States v. Johnson, 37 F.3d 1352, 1354 (9th Cir. 1994)). My disagreement with the majority is that whether or not the dangerous object is actually perceived by the victim, U.S.S.G. § 2B3.1(b)(2)(E) still requires the presence of some object which has the objective appearance of a dangerous weapon.

15

is being made here by the majority is that they are reading into U.S.S.G. § 2B3.1(b)(2)(E) the notion that whether or not the perpetrator possessed a weapon should be determined from the vantage point of the subjective belief of the victim rather than from the vantage point of an objective assessment of the evidence associated with the defendant.[3]  See, e.g., United States v. Woodard, 24 F.3d 872, 874 (6th Cir. 1994) (applying objective standard in determining whether defendant appeared to possess dangerous weapon).  Neither the language of the statute nor the reasoning of the decisions support the majority's view.  I respectfully dissent.

---

[3]  It could not be seriously contended that in order for a two level enhancement to stand under U.S.S.G. § 2B3.1(b)(2)(F) for threat of death, that the victim's subjective belief that such a threat was made, when in fact, the evidence shows that no threat was made, would support such an enhancement.  A three level enhancement under U.S.S.G. § 2B3.1(b)(2)(E) should be no different.  A perception by the victim that the perpetrator possessed a weapon or object should not support an enhancement if, in fact, the evidence shows that the perpetrator had no weapon or object.

16