*RECOMMENDED FOR FULL-TEXT PUBLICATION*
*Pursuant to Sixth Circuit Rule 206*

ELECTRONIC CITATION:  2001 FED App. 0113P (6th Cir.)
File Name:  01a0113p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

No. 99-5710

DERRICK CLINTON DENTON,
  *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No.  98-20014—Jerome Turner, District Judge.

Argued:  March 15, 2001

Decided and Filed:  April 13, 2001

Before:  COLE and GILMAN, Circuit Judges; ALDRICH,[*]
District Judge.

_____

## COUNSEL

**ARGUED:**  Linda Parson Khumalo, PARSON KHUMALO
LAW FIRM, Memphis, Tennessee, for Appellant.  Stuart J.
Canale, ASSISTANT UNITED STATES ATTORNEY,

_____

[*]The Honorable Ann Aldrich, United States District Judge for the
Northern District of Ohio, sitting by designation.

1

Memphis, Tennessee, for Appellee. **ON BRIEF:** Linda Parson Khumalo, PARSON KHUMALO LAW FIRM, Memphis, Tennessee, for Appellant. Stuart J. Canale, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

———————————

## OPINION

———————————

R. GUY COLE, JR., Circuit Judge. Defendant Derrick Clinton Denton appeals his jury conviction and sentence for kidnapping and use of a firearm during a crime of violence. For the following reasons, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Following a three-day jury trial in the United States District Court for the Western District of Tennessee, Denton was convicted of kidnapping for the purpose of robbery, in violation of 18 U.S.C. § 1201, and carrying and using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). The government's evidence demonstrated that on the morning of Monday, January 12, 1998, Denton kidnapped Georgia Forchia from her Memphis, Tennessee, hotel, forced her at gunpoint to drive him to a check-cashing store in West Memphis, Arkansas, and ordered her to open the store with her keys so that he could rob it. Forchia, an employee of America's Cash Express ("ACE") in New Orleans, Louisiana, was visiting Memphis for two weeks to oversee the opening of a new ACE store. Forchia testified that she had seen Denton in the hallway of her hotel on the night of January 11, 1998, as she was returning to her room after doing laundry. The next day, as Forchia was leaving the hotel for work, she encountered Denton waiting at the elevator. Forchia testified that after she and Denton entered the elevator and the doors closed, Denton grabbed her by the arm, turned her around, and pointed a gun at her. She testified that Denton told her that he wanted her take him to

underlying kidnaping. *It is not necessary that the government be able to convict the defendant under the Federal Carjacking Statute to enhance his kidnaping sentence for the generic crime of "carjacking."*

*Marston*, 1996 WL 38227, at *2 (emphasis added). While our decision in *Marston* is unpublished and thus not binding on subsequent panels of this Court, *see* 6TH CIR. R. 28(g); 206(c), we find our rationale in that case to be equally applicable here. Accordingly, we affirm the district court's enhancement of Denton's sentence for carjacking. *See United States v. Bates*, 213 F.3d 1336, 1340 (11th Cir. 2000) (affirming two-level enhancement for carjacking under § 2B3.1(b)(5) where defendant was not charged under the carjacking statute).

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court in its entirety.

The district court was correct to look to our construction of 18 U.S.C. § 2119 in *Moore* in interpreting U.S.S.G. § 2B3.1(b)(5). *See United States v. Boucha*, 236 F.3d 768, 775-76 (6th Cir. 2001) (considering courts' construction of the federal carjacking statute in interpreting U.S.S.G. § 2B3.1(b)(5), to the extent that the sentencing guideline mirrors the federal statutory language). In *Moore*, we rejected the defendants' contention that they did not "take" the victim's vehicle within the meaning of the federal carjacking statute simply because they did not intend a permanent deprivation of the vehicle. *See* 73 F.3d at 667 ("It matters not that [the defendants] originally set out only to rob the cab driver of his cash."). The district court relied on this holding to conclude that Denton had "taken" Forchia's car within the meaning of the carjacking sentencing guideline. In light of our reasoning in *Moore*, the district court was correct to conclude that it was irrelevant that Denton may not have intended to deprive Forchia permanently of her car.

Moreover, Denton need not be charged under the federal carjacking statute in order to receive a sentence enhancement under § 2B3.1(b)(5). In *United States v. Marston*, No. 95-5267, 1996 WL 38227 (6th Cir. Jan. 30, 1996) (unpublished), the defendant was charged with kidnapping under 18 U.S.C. § 1201. During the kidnapping, the defendant stole a car at gunpoint from the kidnapping victim, but was not charged under the federal carjacking statute. After the district court enhanced the defendant's sentence by two points under the carjacking guideline, the defendant appealed, arguing that the carjacking enhancement was inapplicable because he had not been convicted under the carjacking statute. We disagreed:

The note to the guidelines in question clearly covers defendant's conduct in this situation. The conduct of robbing the victim of her car through the threat of violence made the kidnaping more egregious and Congress chose to punish that conduct through an enhancement in the sentencing guidelines. The two-point enhancement for carjacking reflects the seriousness of carjacking in addition to the seriousness of the

her store to get money out of the safe, and that if she did exactly as she was told she would not be hurt. Forchia stated that Denton ordered her into her car and instructed her to drive him to the store. Upon arriving at the store, Denton ordered Forchia to take the keys and open the door to the store.

As an ACE employee, Forchia was familiar with the store's security system. In particular, Forchia knew that the store was equipped with a device known as a "mantrap," which is a small hallway between two steel doors separating the customer area of the store from the employee area. Forchia testified that the mantrap, which is activated twenty-four hours a day, is designed to detect when there are more than two pressure points on the mat covering the floor of the enclosed hallway. If more than one individual walks through the mantrap at the same time, a silent alarm is triggered, calling the alarm company and notifying the police. Realizing that she could trigger the mantrap alarm without Denton knowing, Forchia walked into the mantrap and waited for Denton to follow her in. The two then proceeded through the mantrap into the employee area of the store together. Forchia's plan worked, and, when the police phoned the store a short time later, she was able to use "yes" and "no" answers to advise them that a robbery was in progress.

At the same time that Forchia was inside the store with Denton, a new employee arrived at the store for her first day of work. Not wanting the new employee to become involved in a possible hostage situation, Forchia told her that the store was closed and instructed her to go away. A very short time later, the police arrived and came to the front of the store. Upon seeing the police, Denton dropped down to the floor and attempted to crawl into the bathroom in the back of the store. At that point, Forchia ran through the mantrap and outside to safety. The police then entered the store and arrested Denton. In the store's bathroom, the police found a bag of Denton's clothing and a thirty-eight caliber revolver.

A jury trial resulted in conviction on both counts. The district court sentenced Denton to 121 months imprisonment on the kidnapping charge, and 60 months imprisonment on the firearms charge. Denton filed a timely notice of appeal, and now asserts the following points of error: (1) the district court erred in denying his pretrial suppression motion; (2) the district court erred in allowing a government witness to read prior consistent statements into the record for the purpose of rehabilitating the witness's credibility; and, (3) the district court erred by enhancing his sentence under the carjacking guideline despite Denton not having been charged with carjacking.

## II.  DISCUSSION

### A.  Motion to Suppress

Prior to trial, Denton filed a motion to suppress statements he made at the time of his arrest, as well as statements made during a videotaped interrogation conducted by Lieutenant Allen of the West Memphis Police Department later the same day. The district court referred the motion to a magistrate judge, who conducted an evidentiary hearing. The magistrate judge recommended that the motion be granted with respect to statements made by Denton at the time of his arrest, but denied with respect to statements made by Denton during his videotaped interrogation. The district court conducted a de novo review of the magistrate judge's Report and Recommendation and, after an evidentiary hearing, concluded that Denton's motion to suppress should be denied in its entirety.

Denton testified before both the magistrate judge and the district court that he was beaten and intimidated by police officers at the time of his arrest. Specifically, Denton claimed that: (1) the arresting officers kicked him in the head and stomped on him while he was handcuffed, lying face-down on the floor; (2) the arresting officers forced him to admit that the gun found in the store's bathroom belonged to him; (3) the arresting officers gave each other "high fives" after stomping on or kicking him; and (4) one of the arresting officers told

with the portion of a statement excerpted by an adverse party). Accordingly, we affirm the district court's admission of Forchia's rehabilitative testimony.

### C.  Enhancement for Carjacking

Denton finally contends that the district court erred in enhancing his criminal offense level by two points under the carjacking provision of the Sentencing Guidelines. In the presentence investigation report ("PSR"), the probation officer failed to include a two-level enhancement for carjacking in calculating Denton's offense level. The government objected to this portion of the PSR and argued that a two-level enhancement was warranted under U.S. Sentencing Guidelines Manual § 2B3.1(b)(5) (1998). At sentencing, the district court sustained the government's objection and enhanced Denton's offense level by two points.

Denton contends that the district court erred in relying on our decision in *United States v. Moore*, 73 F.3d 666 (6th Cir. 1996), in determining whether to enhance Denton's sentence under § 2B3.1(b)(5). Denton asserts that *Moore* is irrelevant to the interpretation of § 2B3.1(b)(5) because that case involved the construction of the federal carjacking statute, 18 U.S.C. § 2119, rather than the carjacking sentencing guideline. Denton further contends that the district court erred in enhancing his sentence under § 2B3.1(b)(5) because Denton was not charged or convicted under the federal carjacking statute.

Dentons' arguments are not persuasive. We review the district court's factual findings with respect to sentencing for clear error and its interpretation of the Sentencing Guidelines de novo. *See United States v. Watkins*, 994 F.2d 1192, 1195 (6th Cir. 1993). Section 2B3.1(b)(5) authorizes a two-level increase if the underlying robbery offense involved carjacking. *See* U.S.S.G. § 2B3.1(b)(5). The Application Notes define "carjacking" as "the taking or attempted taking of a motor vehicle from the person or presence of another by force and violence or by intimidation." U.S.S.G. § 2B3.1, cmt. n.1.

government's motion. The district court cautioned the jury, however, that it should consider Forchia's testimony only for the purposes of determining whether defense counsel had impeached Forchia's credibility. The court expressly instructed the jury not to consider Forchia's statements as substantive evidence against Denton. Forchia thereafter retook the stand and read into the record the three written statements she gave to the police following Denton's arrest.

The district court did not abuse its discretion in allowing Forchia to read into the record her prior statements to the police. In ruling that Forchia's testimony was admissible for rehabilitative purposes, the district court relied on our decision in *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721 (6th Cir. 1994). In *Engebretsen*, we held:

> The trial court has greater discretion to admit prior consistent statements to rehabilitate an impeached witness, by clarifying or explaining his prior statements alleged to be unreliable, than if the statements are offered for their truth under Rule 801(d)(1)(B). . . . [The] use of prior consistent statements for rehabilitation is particularly appropriate where, as here, those statements are part of a report or interview containing inconsistent statements which have been used to impeach the credibility of the witness. . . . This rehabilitative use of prior consistent statements is also in accord with the principle of completeness promoted by Rule 106.

*Id.* at 730 (internal quotation marks and citations omitted). *Engebretson* clearly authorizes the admission of Forchia's rehabilitative testimony in this case. Defense counsel attempted to impeach Forchia's testimony by having her read selected questions and answers from her written statements to the police. In order to rebut Denton's assertion that Forchia's statements were inconsistent, the government was entitled to have Forchia read her statements into the record in their entirety. *See* FED. R. EVID. 106 (providing that a party is entitled to the admission of any part of a recorded statement which ought, in fairness, be considered contemporaneously

him that he was lucky to be alive because in "West Memphis they'll kill you and drink a beer and talk about it later." During his videotaped interrogation later that day, Denton reiterated his claim that he had been kicked in the head by an arresting officer. Denton argues that the alleged coercion during his arrest rendered his inculpatory statements to the police inadmissible. Denton further contends that, because the government failed to prove that the coercive environment created by the arresting officers' conduct had dissipated by the time Denton was interrogated by Lieutenant Allen, the videotape evidence of his confession must also be suppressed. *See United States v. Jenkins*, 938 F.2d 934, 941 (9th Cir. 1991) (holding that where initial confession was illegally coerced by police, government must present affirmative proof that the coercive taint of the earlier confession had dissipated before the subsequent confession was taken).

Denton's arguments are not well-taken. We review the district court's factual findings with respect to a motion to suppress for clear error and its conclusions of law de novo. *See United States v. Roark*, 36 F.3d 14, 16 (6th Cir. 1994). Here, the district court conducted an evidentiary hearing and found that neither the initial statements made by Denton nor his subsequent videotape confession were the result of coercive police actions. Specifically, the court rejected Denton's contention that he had been beaten by the police during his arrest, even though Denton had repeated this allegation during his videotaped interview with Lieutenant Allen. The court found that Denton's statement to Lieutenant Allen that he had been kicked in the head was merely a fabricated attempt to explain why he had lied to the arresting officers on the scene that morning. The court stated:

> I interpreted the videotape the same way Lt. Allen interpreted the videotape, and I think that's the far more reasonable explanation of it, particularly when one considers the context in which that response was given. I mean Mr. Denton is explaining why he lied to the officers at the scene. I mean he's giving a reason for his own untruthful statements, and he basically is blaming

his lack of truthfulness on someone else, and the officers are, you know, available people, but I don't -- I don't understand him to be making, you know, a claim that goes beyond a claim that relates to the force necessary to initially bring him to the ground and to effect the handcuffing, which of course I don't, I don't consider to be force so that that would have in any way overborne his will, caused his on-the-scene statements to be involuntary.

Denton characterizes the issue before the Court as "whether a subsequent confession is valid where a prior confession has been found to be involuntary." Inasmuch as the district court refused to find that Denton's initial incriminating statements to the police were involuntary, however, Denton's characterization of the issue is incorrect. The proper issue for our consideration is whether there is credible proof in the record to substantiate Denton's claim that his will was overborne by coercive police activity, thereby making his statements involuntary. "To support a determination that a confession was coerced, the evidence must establish that: (1) the police action was objectively coercive; (2) the coercion in question is sufficient to overbear the defendant's will; and, (3) the defendant's will was, in fact, overborne as a result of the coercive police activity." *United States v. Rigsby*, 943 F.2d 631, 635 (6th Cir. 1991).

The totality of the record evidence here does not support the conclusion that Denton's incriminating statements to the arresting officers were coerced. Other than Denton's self-serving testimony at the suppression hearing and at trial, there was no credible proof that Denton was mistreated in any way. The district court expressly credited the arresting officers' testimony over Denton's testimony, and found that Denton's testimony was not credible. The district court's findings of fact with respect to the conduct of the arresting officers were not clearly erroneous.

Nor did the district court commit clear error in concluding that Denton's videotaped confession to Lieutenant Allen was

not coerced. Denton was properly advised of his rights and signed a form waiving his rights before agreeing to the taped interview with Lieutenant Allen. Denton himself admitted during the interrogation that Lieutenant Allen was respectful and lenient with him, which was one reason why Denton felt able to open up to Lieutenant Allen about the crime. Moreover, Lieutenant Allen testified as to Denton's calm and relaxed demeanor during the videotaped interrogation, which further suggests that Denton's statements were given voluntarily. Accordingly, we affirm the district court's denial of Denton's motion to suppress.

## B.  Prior Consistent Statements

Denton next contends that the district court erred in allowing a government witness to read prior consistent statements into the record for the purpose of rehabilitating the witness's credibility. We review the district court's admission of testimony for abuse of discretion. *See United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993).

During trial, Forchia testified that she gave three separate written statements to law enforcement officers following Denton's arrest. In an effort to impeach her credibility at trial, defense counsel attempted on cross-examination to point out inconsistencies in Forchia's three statements. Defense counsel asked Forchia to read answers to specific questions posed to her by law enforcement officers, but did not permit her to explain the context of her answers or read the answers to other questions posed by the police. On redirect examination, the government attempted to introduce into evidence all of Forchia's written statements to the police as prior consistent statements under Rule 801 of the Federal Rules of Evidence. The district court, however, refused to admit the statements under the Rule 801 hearsay exception.

After the close of its case-in-chief, the government moved that Forchia be allowed to read her three prior statements into the record so that the jury could determine whether such statements were truly inconsistent with one another. After considering this request, the district court granted the