**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Moses Bernard ANTHONY and Kenneth Ray Bates, Defendants–Appellants.**

**No. 00–4118, 00–4215.**

United States Court of Appeals, Sixth Circuit.

April 15, 2002.

Before MARTIN, Chief Judge, BOGGS, and DAUGHTREY, Circuit Judges.

PER CURIAM.

The defendants, Moses Anthony and Kenneth Bates, were jointly indicted with a third co-defendant for armed bank robbery and for use of a firearm in relation to a crime of violence. After Anthony and the co-defendant pleaded guilty, Bates went to trial and was found guilty by a jury on both counts. Anthony now appeals his sentence, and Bates appeals both the conviction and his resulting sentence. Their cases have been consolidated for purposes of this appeal.

With respect to his conviction, Bates claims that (1) the district court erred in not granting him a hearing on his pre-trial claim of ineffective assistance of counsel, (2) the district court erred in denying his motion to suppress post-arrest statements, (3) the evidence was insufficient to support his conviction, and (4) the jury did not represent a fair cross-section of the community. As explained more fully below, we find no reversible error in connection with these claims. In his challenge to the district court's sentencing order, Bates contends that the court erred in imposing two offense-based enhancements. However, we need not consider this final claim, because Bates's status as a career offender, which is not challenged on appeal, means that the offense-based enhancements played no part in determining his final sentence.

Moreover, we are prevented from reviewing the propriety of Anthony's sentence, because the plea agreement that he entered into with the government prior to pleading guilty includes a waiver of the right to appeal that includes any challenge to his sentence and which, on its face, appears to be valid. Before this court, he

has failed to offer any reason why the waiver is not fully enforceable. Hence, Anthony's appeal must be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

The evidence before the jury indicated that on the day of the robbery, two men entered a Bank One branch in Lima, Ohio. One of the men, James Allison, brandished a revolver, while the other, Kenneth Ray Bates, vaulted the counter and took some $19,000 in currency, including marked "bait" bills. Allison and Bates fled the scene in a blue Chevrolet Nova driven by their accomplice, Moses Anthony, and then switched cars in a church parking lot about a mile and a half from the bank, where two witnesses saw them, suspected something was amiss, and called the police.

As a result, a local police chief, John Drake, was able to spot the black Lincoln in which the suspects were believed to be traveling on Interstate 75 and pulled it over. Before the officer could finish radioing for back-up, the Lincoln's rear door swung open and Anthony emerged with a gun, firing three or four shots at Chief Drake. Although one of the shots entered the driver's side windshield of the patrol car, Drake had taken cover and was not injured. Anthony re-entered the Lincoln, and Bates sped off.

Chief Drake gave chase, following the Lincoln as it left the interstate and entered an industrial park area in nearby Wapakoneta, Ohio. Drake observed the three men exit the Lincoln near an animal shelter and take off on foot. Soon after, local police officers arrived on the scene and Anthony and Allison were taken into custody. Several hours later, Bates was found hiding in the bushes about 50 yards from the abandoned Lincoln. At the time Bates was apprehended, the officers observed currency stuffed into the bottom of his pant legs. He was wearing two pair of pants—a pair of jeans over a pair of running pants. Bates was informed of his rights and taken in for interrogation.

Subsequently, Bates was photographed with the money that had emerged from his pant legs. An FBI agent on the scene, Thomas Bailey, found that the serial numbers on those bills matched those of the "bait" money stolen from Bank One in Lima. Because Bates was "covered in sweat and dirt," the officers strip-searched him to recover any remaining money from his person. When the search was over, Bates's clothing was returned to him.

After being informed of his rights a second time and signing a rights waiver form, Bates agreed to answer questions posed by FBI Agent Bailey. During the interview, Bates confessed to his participation in the bank robbery and described Anthony's shooting at Chief Drake on the interstate. Bates also prepared a short written statement admitting to the robbery. At some point, Agent Bailey noted that Bates was experiencing some discomfort in his eye and asked him if he needed anything. Bates told the officers that dirt and dust had gotten in his eye while he was hiding in the bushes. At Bates's request, the officers provided him with tissues and water with which to wipe his eye.

Later, while in jail and after being booked for the robbery, Bates received treatment from a nurse for his eye problem. Bates told the nurse that he got dirt in his eye when he "dove into the bushes" while "running from the police," because he had "just robbed a bank." The next day, Bates confessed to the robbery once more during a videotaped interview with Detective White of the Auglaize County Sheriff's Department.

Following their indictment for armed bank robbery in violation of 18 U.S.C.

§§ 2113(a),(d), and 18 U.S.C. § 2, and use of a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c) and 18 U.S.C. § 2, Allison and Anthony pleaded guilty to both counts. Bates proceeded to trial, claiming initially that his statements to police should be suppressed as involuntary as a result of (1) the strip search, (2) injuries to his eye and foot, and (3) Chief Drake's identification of him as the person who had fired shots at Drake during the chase on the interstate. At a subsequent suppression hearing before a magistrate judge, several law-enforcement officers testified but Bates did not. Addressing Bates's foot injury—Bates had undergone foot surgery six months prior to the robbery—the judge found "that the testimony, medical records and videotape fail to support [Bates's] contention of a foot problem so severe as to cause his will to be overcome." With respect to the eye injury, the judge noted that the eye problem was apparent on the videotape, but observed that Bates "did not complain about the medical care he was receiving or ask for additional medical attention" and further noted that when the nurse gave him eye drops, Bates threw the bottle in the toilet. Accordingly, the judge held that the eye condition, like the foot injury, did not "rise to the level of injury required to contribute to the overcoming of Defendant's will." In addition, the judge did not find evidence that the statements were made in a coercive environment and concluded that the strip search was not coercive in view of the "unchallenged testimony" that Bates was fully dressed during the questioning. Finally, the magistrate judge noted that there was conflicting testimony from Chief Drake and FBI Agent Bailey regarding whether Chief Drake pointed at Bates and identified him as the shooter, but noted that even if Drake did identify Bates as the shooter, the identification "would have occurred toward the end of Defendant's interview and would not have had a persuasive effect on Defendant's decision to make a statement or the voluntariness of such statement." The judge further noted that Bailey and Drake both testified that they spoke in a conversational tone that was unlikely to be heard by Bates. In sum, finding "the testimony of the law enforcement officers credible," the magistrate judge recommended the district court deny the motion to suppress. His recommendation was subsequently adopted by the district court.

At some point during the pre-trial proceedings, Bates became dissatisfied with his attorney and, after a hearing, the district court appointed new counsel. Thereafter, Bates filed a claim that he had received ineffective assistance of counsel at the suppression hearing and moved for a rehearing. The district court held a full evidentiary hearing on the effectiveness issue and entered a written order denying Bates's motion for a new hearing on the motion to suppress. The court found that Bates had failed to "even suggest the existence of any evidence tending to show that his confession was involuntary," or that "he would have presented such evidence but was unable to do so because of Attorney Cocoves' failure to represent him." Thereafter, Bates went to trial and was convicted by a jury of armed bank robbery and use of a firearm. He was sentenced to 264 months on the armed bank robbery count, and a consecutive sentence of 60 months on the firearms count. Bates now appeals his conviction and sentence.

## DISCUSSION

### 1. Failure To Hold Hearing On Claim Of Ineffective Assistance Of Counsel

The defendant was provided with a full evidentiary hearing on his pre-trial ineffec-

tiveness claim, following which the district court ruled that there was no basis for the claim. On appeal, Bates nevertheless contends that he was denied an evidentiary hearing, apparently referring to a renewed motion regarding the effectiveness of counsel that was made *pro se* at the time of sentencing. In his appellate brief, however, Bates makes little effort to identify which allegations in his several *pro se* filings and numerous statements in open court should have been the subject of an evidentiary hearing, and no effort whatsoever to explain how they might have raised a factual question under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We note that "it is a 'settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir.1996) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990)).

The only allegations specified in Bates's appellate brief are "counsel's failure to allow him to testify at the suppression hearing, counsel's failure to call witnesses as to the Appellant's medical condition, and counsel's failure to challenge the jurisdiction of the court." As an initial matter, we conclude that the purported jurisdictional challenge that Bates complains was not made on his behalf is legally frivolous. With respect to Bates's other two specified allegations, the record shows the district court *did* in fact hold an evidentiary hearing allowing Bates the opportunity to prove his allegation of ineffective assistance of counsel with respect to his representation at the suppression hearing, including the opportunity to proffer medical testimony about his condition the day he was arrested. At the evidentiary hearing, Bates testified that his then-lawyer did not permit him to testify at the suppression

hearing, and he offered documentary medical evidence that allegedly was not offered on his behalf. After reviewing the evidence, however, the district court found no prejudice to Bates and thus concluded that he had failed to substantiate his claim of ineffective assistance.

In sum, Bates's claim that the district court abused its discretion by failing to provide him with an evidentiary hearing on his claim of ineffective assistance of counsel is meritless.

### 2. Denial Of Motion To Suppress Post–Arrest Statements

■ We review the denial of the defendant's motion to suppress his oral, written, and videotaped confessions on the facts for clear error and on the law *de novo*. *See United States v. Denton*, 246 F.3d 784, 787 (6th Cir.2001). Decisions that are "expressly anchored in credibility evaluations of witnesses who testified during the suppression hearing ... [are] beyond appellate review." *United States v. McNeal*, 955 F.2d 1067, 1071 (6th Cir.1992). However, "[t]he district court's conclusions concerning the voluntary nature of an inculpatory statement are reviewed *de novo*." *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir.1999).

■ To support his claim of coercion, Bates relies on the fact that he was strip-searched by officers searching for stolen currency and, in the process of that search, was required to stand naked before several officers. Coupled with his foot and eye injuries, Bates argues that this tactic was coercive and rendered his confession involuntary. While a strip search may certainly be coercive, the magistrate judge determined that Bates was fully clothed while being interviewed. Moreover, the magistrate judge credited FBI Agent Bailey's testimony that Bates "did not appear

to be in pain, did not complain about eye or foot problems and readily agreed to speak to Bailey." On appeal, the defendant has failed to establish that those factual findings were clearly erroneous.

 Bates also asks this court to consider testimony he gave at *trial* that was not offered to the district court when it ruled on Bates's pretrial motion to suppress, including his testimony that he was "kicked by an officer," and "struck in the eye" during his initial arrest. Although we are not restricted to considering only the evidence offered during the suppression hearing, and therefore may consider testimony offered at trial relating to the question of coercion, *see United States v. Perkins*, 994 F.2d 1184, 1188 (6th Cir.1993), when the evidence that emerges at trial supposedly casts doubt on the district court's initial suppression ruling, the defendant must renew his motion to suppress on that basis, in order to secure a ruling by the district court. Counsel argued on appeal that the district should have granted a mistrial *sua sponte* when additional evidence to show coercion was introduced, but he could not produce any legal authority for this proposition. We know of none. Indeed, it appears that the law is to the contrary. *See, e.g., United States v. Hicks*, 978 F.2d 722, 724 (D.C.Cir.1993) ("An appellate court should not rely on evidence first produced at trial to reverse a pre-trial denial of a suppression motion not renewed at trial.").

### 3. Sufficiency Of The Evidence

The defendant contends that the evidence at trial was insufficient to support a finding that he knowingly participated in the robbery. We conclude, however, that his two-pronged argument is wholly without merit.

First, Bates relies on the evidence of his foot injury to claim that it was "physically impossible" for him to have vaulted the bank counter and taken the money. However, Bates's co-defendant James Allison, testified not only that Bates participated in the robbery, but also that he had no trouble running, walking, or vaulting over the counter. Especially when coupled with Bates's post-arrest statements admitting to the crime, this evidence is more than sufficient to support the jury's verdict.

Second, Bates makes the curious—and thoroughly disingenuous—argument that one of his confessions demonstrates his lack of participation in the robbery. In his written statement, Bates stated that he and *two* others went inside the bank to rob it. However, argues Bates, "[t]he evidence shows that only two persons were in the bank; therefore, the Appellant could not have been one of the robbers, or he would have at least known the numbers of the participants." Such a construction of the facts was obviously rejected by the jury, which had the testimony of Allison and Bates's other confessions upon which to rely.

### 4. Racial Composition Of Jury Venire

 Bates argues that he was deprived of his Sixth Amendment right to trial by an impartial jury because the all-white venire did not represent a cross-section of the community. He contends, therefore, that he is entitled to a new trial. However, the record before us fails to indicate that the defendant made a timely objection to the composition of the venire—indeed, it appears that Bates, acting *pro se*, raised the issue for the first time at sentencing. In any event, it is clear that he cannot substantiate this claim.

In *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), the Supreme Court held "that the American concept of the jury trial contemplates a jury drawn from a fair cross section of the community," *id.* at 527, 95 S.Ct. 692, and

that the fair cross-section requirement is rooted in the Sixth Amendment, *see id.* at 538, 95 S.Ct. 692. There is, however, no right to a jury of any particular composition. *See id.* In *Duren v. Missouri,* the Court established the following test for a *prima facie* violation of the fair cross-section requirement:

> [T]he defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

Although the government concedes that the jury that tried Bates did not include any African–Americans, a "distinctive group in the community," *id.,* within the meaning of *Duren,* the record is silent with regard to the composition of the venire. Thus, Bates has not met the first prong of the *Duren prima facie* case. Moreover, Bates has proffered no evidence regarding the second and third prongs. Bates's failure to point to any evidence supporting a *prima facie* violation of the fair cross-section requirement defeats this claim. *See, e.g., United States v. Allen,* 160 F.3d 1096, 1103–04 (6th Cir.1998) (finding no Sixth Amendment fair cross-section violation where defendants failed to meet second and third prongs of *prima facie* case).

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court as to defendant Bates in all respects. The appeal by defendant Anthony is DISMISSED.