Moses B. ANTHONY, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 3:03 CV 7095.

United States District Court, N.D. Ohio, Western Division.

May 22, 2003.

Moses Bernard Anthony, pro se.

Thomas O. Secor, Office of U.S. Atty., Toledo, OH, for U.S.

### MEMORANDUM OPINION AND ORDER

KATZ, District Judge.

This matter is before the Court on Petitioner's motion for a Certificate of Appealability (Doc. No. 11). For the reasons

stated below, Petitioner's motion will be denied.

## BACKGROUND

On August 25, 1998, James E. Allison, Sr. ("Allison") and Kenneth Ray Bates ("Bates") entered a Bank One bank (the "bank") in Lima, Ohio. Allison brandished a revolver, while Bates lept over the counter and took $ 19,000 in currency, including marked bills. Allison and Bates then fled the scene in a blue Chevrolet Nova driven by Petitioner Moses Bernard Anthony ("Anthony"). The three men drove the Nova to a church parking lot approximately one and one-half miles from the bank where two witnesses observed the three switch from the Nova into a black Lincoln. As a result, John Drake ("Drake"), a local police chief, spotted the Lincoln traveling on Interstate 75, and pulled the vehicle over. Before Drake could finish calling for back-up assistance, Anthony appeared from the rear of the Lincoln and fired at Drake. Although one shot penetrated the driver's side windshield, Drake, who had taken cover, was not injured. Anthony then re-entered the car, which sped off, with Drake in pursuit.

Drake followed the Lincoln as it left the interstate and entered an industrial park in Wapakoneta, Ohio, where Petitioner, Bates and Allison exited the car and continued on foot. Local police arrived shortly thereafter taking Petitioner and Allison into custody. Bates was apprehended several hours later hiding in nearby bushes. On September 3, 1998, Petitioner, along with Bates and Allison, were indicted for bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and § 2 (Count I), and the use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) and § 2 (Count II).

Anthony originally plead not guilty on both counts. Petitioner and the government negotiated a plea agreement. (Doc No. 85, 3:98CR817–01). On March 11, 1999, Anthony changed his plea to guilty on both counts. At his Sentencing Hearing, Petitioner's counsel objected to a three-level Victim Related enhancement due to the shots fired at Drake. This Court, however, found that the shooting, which occurred approximately 15–20 minutes after the robbery, was part of the getaway (i.e. part of a continuous chain events) following the robbery, thereby making the enhancement appropriate. Anthony was sentenced to ninety-two (92) months on Count I, and an additional sixty (60) months on Count II, to be served consecutively. Petitioner appealed the judgment. On April 15, 2002, the Sixth Circuit Court of Appeals dismissed his direct appeal being unable to review his sentence because the waiver contained in his plea agreement was valid and enforceable. *United States v. Anthony,* 39 Fed. Appx. 91, 92–93 (6th Cir.2002).

Anthony then filed a motion pursuant to 28 U.S.C. § 2255 to vacate his sentence as relates to Count II on two grounds: 1) actual innocence; and 2) ineffective assistance of counsel. (Doc. No. 1). The government filed a response (Doc. No. 5) arguing that Petitioner: 1) waived his right to appeal or file motions under § 2255 in the plea agreement; 2) is not actually innocent; and 3) did not receive in effective assistance of counsel. After considering the parties' contentions, this Court issued an Order denying Petitioner § 2255 motion. (Doc. No. 7). Anthony then filed a notice of appeal regarding the Court's Order. (Doc. No. 9). He now moves for a Certificate of Appealability ("COA") reasserting essentially the same arguments. (Doc. No. 11).

## DISCUSSION

*A.* CERTIFICATE OF APPEALABILITY STANDARD

■ The issuance of a COA is not a matter of right. Such a certificate may

issue only if the applicant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This statute codifies the standard set forth by the United States Supreme Court in *Barefoot v. Estelle*, 463 U.S. 880, 892–93, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), that "probable cause [for an appeal] requires something more than the absence of frivolity and that the standard is higher than the one of the 'good faith' requirement of [28 U.S.C.] § 1915." Obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Obtaining a COA under § 2253(c), requires "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 483–84, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (quoting *Barefoot*, 463 U.S. at 893, and n. 4, 103 S.Ct. 3383). *See also Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002).

## B. PETITIONER'S MOTION/APPLICATION FOR COA

Anthony moves for a COA so that he may further litigate the issues of actual innocence and ineffective assistance of counsel, which this Court has already found to be non-meritorious in denying his motion pursuant to 28 U.S.C. § 2255 to vacate his sentence as relates to Count II. The reasons set forth in support of his motion for a COA are essentially the same as those contained in his original § 2255 motion. This Court again finds these arguments to be without merit, and Anthony should not be encouraged to proceed on appeal.

To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637–638, 113 S.Ct. 1710, 1721–1722, 123 L.Ed.2d 353 (1993). To prevail on a § 2255 motion alleging non-constitutional error, the petitioner must establish a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir.1990) (citing *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)).

*Watson v. United States*, 165 F.3d 486, 488 (6th Cir.1999).

In *Watson*, the court held that "a defendant's informed and voluntary waiver of the right to collaterally attack a sentence in a plea agreement bars" the right to file a § 2255 motion. *Watson*, 165 F.3d at 489. The *Watson* court affirmed finding that the prisoner had validly "waived the right to collaterally attack his sentence in his plea agreement". *Id.* at 488. In *Watson*, the court affirmed the district court's order denying a federal prisoner's § 2255 motion noting that it need not address the merits of his appeal since the prisoner had waived his right to seek § 2255 relief under the express terms of the plea agreement.[1] *Id.* at 487–88. The *Watson* court

---

1. In *Watson*, the plea agreement stated in pertinent part:

The defendant further agrees not to file any motions or pleadings pursuant to 28 U.S.C. § 2255. Specifically, the defendant knowingly, intentionally, and voluntarily waives his right to collaterally attack the plea(s) being offered in this case. Defendant further acknowledges that a breach of this clause of the plea agreement would leave the United States free to withdraw from the plea agreement.

also examined the record in determining that the prisoner, who had been represented by counsel, had "knowingly, intelligently, and voluntarily waived his right to collaterally attack his plea." *Id.* at 489. The prisoner verified that "no one had threatened him or forced him in any way to plead guilty." *Id.* The prisoner also acknowledged that he had signed the agreement, and understood that he was not obligated to accept it. *Id.*

In *Watson*, however, the court noted that its decision did not "address the question of whether the waiver of § 2255 relief in a plea agreement bars a collateral attack based upon ineffective assistance of counsel." *Id.* at n. 4. The Sixth Circuit has answered this question in the affirmative. *Davila v. United States*, 258 F.3d 448, 450–51 (6th Cir.2001).[2] In *Davila*, the court affirmed the district court's denial of the prisoner's § 2255 motion, finding that the prisoner, a lawyer, had waived his right to assert a claim of ineffective counsel pursuant to § 2255 not only by the express language of the relevant portion of the plea agreement, but also the district court's "detailed explanation" of that provision. *Id.* at 452–53.

■ In the case *sub judice*, Petitioner knowingly, intelligently and voluntarily waived his right to collaterally attack his sentence on the grounds he now asserts. The plea agreement Anthony and the government entered into is virtually indistinguishable from that in *Davila*. Specifical-

ly, the signed plea agreement *sub judice* states:

> The Defendant, recognizing that in limited circumstances he could have the right to appeal the sentence imposed, hereby knowingly, voluntarily, and expressly waives the right to appeal his sentence on any ground, including any appeal right conferred by 18 U.S.C. § 3742. The defendant further agrees not to contest his sentence in any post conviction proceeding, including but not limited to a proceeding under 28 U.S.C. § 2255, except in the event and only to the extent that there may be a retroactive amendment to the sentencing guidelines that would applicable to Defendant. The defendant, however, reserves the right to appeal the following: (a) any punishment imposed in excess of a statutory maximum and, (b) any punishment to the extent it constitutes an upward departure from the guideline range deemed most applicable by the sentencing court.

(Doc. No. 85, 3:98–CR–817, Anthony Plea Agreement, ¶ 16). Moreover, the plea agreement also provides:

> The Defendant acknowledges that he has read this Plea Agreement, that he has had an opportunity to discuss it with his attorney, that he fully understands the agreement and is voluntarily signing it. Furthermore, the attorney for the Defendant acknowledges that he has discussed this agreement with the De-

---

*Id.* at 487.

2. The plea agreement at issue in *Davila* stated:

> The defendant, recognizing that in limited circumstances he could have the right to appeal the sentence imposed, hereby knowingly, voluntarily, and expressly waives the right to appeal his sentence on any ground, including any appeal right conferred by 18 U.S.C. § 3742. The defendant further agrees not to contest his sentence in any

post conviction proceeding, including but not limited to a proceeding under 28 U.S.C. § 2255. The defendant, however, reserves the right to appeal the following: (a) any punishment imposed in excess of a statutory maximum and, (b) any punishment to the extent it constitutes an upward departure from the guideline range deemed most applicable by the sentencing court.
> *Id.* at 452.

fendant, that he fully explained this agreement to the Defendant, and that he concurs in the Defendant's decision to sign the agreement.

*Id.* at ¶ 18.

Anthony was represented by counsel at both his Change of Plea Hearing and Sentencing Hearing. Further, as in *Davila*, the Court took great efforts to ensure that Anthony's change of plea from not guilty to guilty and his execution of the plea agreement, including the waiver, were voluntary and with the assistance of counsel. As part of the Change of Plea Hearing, the Court stated:

> Mr. Anthony, it's my understanding that it's your intention to withdraw your former plea of not guilty and offer a plea of guilty to Counts 1 and 2 of the indictment. Assuming that to be correct, before I can accept that plea, I need to determine that you're competent to plea, that the plea is totally voluntary, that you've had the assistance of counsel, you understand your trial rights, you understand fully the nature of the charges against you, and finally that there's a factual basis for your plea.

(Doc. No. 200, 3:98–CR–817, Change of Plea Hrg., p. 3).

Petitioner stated that he understood the charges as read to him by the Court. *Id.* at 7. The Court notes the following exchange with Petitioner:

> Q. Now, if at trial you were found guilty, you would have the right to appeal. However, the plea agreement which you have before you and which you reviewed with Mr. Jacobs [Plaintiff's attorney] has a provision in it which waives your right to an appeal including the appeal of the sentence. Ordinarily the court of appeals upholds those waivers, but you would have the right to test if you so chose. Do you under-

> stand that you've waived your right to appeal?

> A. Yes, sir.

> Q. Are you willing to live by the plea agreement and your waiver?

> A. Yes, sir.

*Id.* at 9–10. Anthony also acknowledged that no one forced him to plead guilty, or threatened him or made promises other than that in the plea agreement in an effort to change his plea. *Id.* at 12–13. Petitioner's sentence is neither in excess of statutory authority nor did the Court make an upward departure from the guideline range, issues that were reserved for appeal in the plea agreement. Moreover, in response to his direct appeal, the Sixth Circuit stated "the plea agreement that he entered into with the government prior to pleading guilty includ[ed] a waiver of the right to appeal that includ[ed] any challenge to his sentence and which on its face, appears to be valid. Before this court, he has failed to offer any reason why the waiver is not fully enforceable." *Anthony*, 39 Fed.Appx. at 92–93.

■ Anthony, however, contends that he is actually innocent of the charge in Count II, and that as result he "could not have knowingly, voluntary, nor intelligently waived an unforeseen right to challenge a conviction and or sentence that he is actually innocent of." (Doc. No. 1, p. 14). Petitioner argues, that his limited role as the "lookout" and "driver," who neither entered the bank nor used a gun therein, precludes conviction under Count II. He made a like objection at his sentencing hearing. (Doc. No. 249, 3:98–CR–817, Sentencing Hrg., pp. 11–13). This argument is without merit. The Sixth Circuit Court of Appeals "has previously upheld convictions under § 924(c)(1) under a theory of aiding and abetting even in cases in which the defendant never had actual pos-

session of a firearm during the course of committing the crime." *Rattigan v. United States,* 151 F.3d 551, 557 (6th Cir.1998) (citing *United States v. Jones,* 102 F.3d 804 (6th Cir.1996); *United States v. Lowery,* 60 F.3d 1199 (6th Cir.1995)).

In responding to his objection at the Sentencing Hearing, the Court stated: "[b]ecause you were a co-conspirator in this robbery, a co-conspirator by driving the car, you are as guilty as they are of using the weapon in the perpetration of the robbery. That's just the law." *Id.* at 13. *See United States v. Mann,* 7 Fed. Appx. 424, 424–25 (6th Cir.2001) (affirming denial of a defendant's § 2255 motion challenge to his plea of guilty for violating 18 U.S.C. § 924(c) where the defendant maintained that his role in an armed bank robbery was that of the getaway driver "who was not at the scene of the robbery").

Moreover, the government also argues that Anthony's having fired at Drake after being pulled over on Interstate 75 justifies conviction under Count II. "[T]he crime of bank robbery cannot be completed without some form of flight or attempted flight, the crime is more naturally understood to include the act of fleeing and the immediate consequences of such flight." *United States v. Muhammad,* 948 F.2d 1449, 1456 (6th Cir.1991). Though originally in relation to a three-point enhancement under United States Sentencing Guideline 3(A)1.2(b), the Court found "that this activity with the gun on the highway shooting at the police chief was a part of the getaway after the robbery occurred. It was a continuous chain of events ..." (Doc. No. 249, 3:98–CR–817, Sentencing Hrg., p. 10).[3]

Lastly, Petitioner argues that he received ineffective assistance of counsel in advising him to plead guilty to Count II, and not otherwise objecting to the charge. He contends that as a result he neither "knowingly, nor intelligently plead to count (2) two" of the indictment nor waived his rights under § 2255. (Doc. No. 1, pp. 13–14; Doc. No. 11, pp. 2–3, 5). "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process" that it "cannot be relied on having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This requires a showing "that counsel's performance was deficient." *Id.* at 687, 104 S.Ct. 2052. Counsel must have committed "errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* In other words, "representation fell below an objective standard of reasonableness." *Id.* at 688, 466 U.S. 668. The proper measure of performance is "prevailing professional norms." *Id.* A defendant must also demonstrate "that the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. 2052. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

■ In the case *sub judice,* the Court acknowledges that the Petitioner, not his counsel, objected to Count II at his Sentencing Hearing. The Court, however, explained the factual and legal basis for his being charged under Count II, and the Petitioner responded "[t]hank you" without further objection. *Id.* at 12–13. At

---

**3.** Petitioner's argument that liability under Count II results in double jeopardy (Doc. No. 11, pp. 4–5) is also mistaken. *See United* *States v. Davis,* 306 F.3d 398, 417–18 (6th Cir.2002); *United States v. Moore,* 917 F.2d 215, 229–30 (6th Cir.1990).

the Change of Plea Hearing, when represented by different counsel, Anthony responded to the Court's inquiry "that he was satisfied with his [counsel's] advice" and efforts in the case. (Doc. No. 200, 3:98–CR–817, Change of Plea Hrg., p. 7). The record and facts demonstrate that the claim of ineffective assistance of counsel is baseless. Thus, Petitioner's motion for a COA is denied.

### CONCLUSION

For the reasons stated above, Petitioner's motion for a Certificate of Appealability (Doc. No. 11) is denied.

IT IS SO ORDERED.