[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10758
Non-Argument Calendar
_____

D.C. Docket No. 8:12-cr-00365-SDM-MAP-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERMAINE L. LIPPETT,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 26, 2014)

Before TJOFLAT, JORDAN, and FAY, Circuit Judges.

PER CURIAM:

Jermaine L. Lippett appeals his conviction and sentence for conspiracy to

steal government property worth more than $1000, stealing more than $1,000 of

U.S. Treasury funds, and aggravated identity theft.  We affirm Lippett's convictions and sentences but remand for the limited purpose of correcting a clerical error in the judgment.

## I. BACKGROUND

In 2011, Lippett approached Whitley Glover, a bank teller at Mid-Florida Federal Credit Union ("MFFCU"), and solicited Glover's participation in concealing and converting stolen tax-refund checks by depositing them into accounts at the credit union.  In August and September 2011, Lippett gave Glover several fraudulently obtained federal tax refund checks, each of which was for more than $1000.  At Lippett's direction, and in return for a fee paid by Lippett, Glover deposited the checks into the accounts of six MFFCU account-holders.  The account-holders withdrew the proceeds of each check, which they gave to Lippett, also in exchange for a fee.  The total amount of fraudulently obtained checks was $96,805.12.

In September 2012, a federal grand jury indicted Lippett for: (1) conspiracy to steal government property worth more than $1000, in violation of 18 U.S.C. §§ 371 and 641 (Count 1); (2) 14 counts of stealing more than $1000 of U.S. Treasury funds, in violation of 18 U.S.C. § 641 (Counts 2-15); and (3) aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Count 16).  In November 2012, Lippett signed a plea agreement, in which he agreed to plead guilty to

2

Counts 1, 4, and 16, to make full restitution to the U.S. Treasury and MFFCU and to forfeit various assets to the government.  In return, the government agreed, among other things, not to oppose a sentence at the low end of Lippett's Sentencing Guidelines range, so long as it received no adverse information suggesting such a recommendation to be unwarranted.

As to acceptance of responsibility, the plea agreement provided:

> At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to [U.S.S.G. § ]3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

R1-29 at 5.  Lippett's plea agreement also contained a factual basis, in which he agreed to the facts above.

Following a change-of-plea hearing, the district judge accepted Lippett's guilty pleas and adjudicated him guilty.  Lippett's presentence investigation report ("PSI") contained a description of the offense conduct that included many of the facts stipulated in Lippett's plea agreement.  The probation officer recommended a two-level, obstruction-of-justice enhancement, under U.S.S.G. § 3C1.1, on the ground that one of Lippett's co-conspirators told agents Lippett instructed him to deny Lippett's involvement in the scheme and to place all blame on Glover.  The PSI also recommended denying an acceptance-of-responsibility reduction, on the

3

ground that Lippett recently had objected to many of the facts contained in his plea agreement. The PSI calculated a criminal history category of I and a total offense level of 24 for Counts 1 and 4, based, in part, on a total actual and intended loss of more than $120,000, but less than $200,000. Count 16 required a mandatory consecutive 2-year prison sentence. *See* 18 U.S.C. § 1028A(a)(1), (b)(2).

In his PSI objections, Lippett asserted he did not approach or recruit Glover, or ask for her help in depositing the checks forming the basis for several counts, including Count 4. He also objected to the obstruction-of-justice enhancement. In addition, Lippett filed a sentencing memorandum, in which he again objected to several PSI contentions, including (1) that he approached Glover and asked for her help in depositing fraudulent U.S. Treasury checks; (2) that he instructed Glover to deposit checks into more than one person's account; and (3) that he paid Glover for the checks she deposited on more than three occasions. Lippett also asserted he was responsible for a total loss of no more than $20,994.84. As to the obstruction-of-justice enhancement, Lippett contended that, approximately one year before he was indicted, he told a co-conspirator: "Whitley Glover is the one who signed the checks and deposited the checks and therefore she committed the crime, and that is the truth." R1-46 at 4.

In an amended sentencing memorandum, Lippett asserted "there has never been an instance in which he has provided Glover with a U.S. Treasury or similar

4

type refund check." R1-50 at 2. He also revised his loss-amount calculation and argued he should be held accountable for a total loss of no more than $13,524.84.

During Lippett's sentencing hearing, Lippett withdrew all objections to the facts as set forth in the PSI, and the district judge adopted the PSI's factual content. Turning to the guideline calculations, Lippett contended he should receive a two-level, acceptance-of-responsibility reduction. The government responded that "a defendant who does not admit or frivolously denies material offense conduct is not entitled to a reduction for acceptance of responsibility," R4 at 6, but ultimately did not object to the requested reduction. The district judge awarded a 2-level acceptance-of-responsibility reduction, which yielded a total offense level of 22. The government recommended a low-end Guidelines sentence, in accordance with Lippett's plea agreement, while noting "there [were] reasons that would justify not following that provision." R4 at 15.

The district judge sentenced Lippett to concurrent 41-month sentences on Counts 1 and 4, and a consecutive 24-month sentence on Count 16, for a total of 65 months of imprisonment, to be followed by 3 years of supervised release. The judge also ordered Lippett to pay restitution to the Internal Revenue Service, incorporated into Lippett's judgment a prior order of forfeiture, and dismissed the remaining counts against Lippett. Neither party raised any additional objections.

Lippett's written judgment stated he had been sentenced "to be imprisoned for sixty-four (64) months, consisting of concurrent terms of forty-one (41) months as to each of counts one and four, and a consecutive term of twenty [sic] (24) months as to count sixteen." R1-52 at 2. Lippett's judgment further stated that, following his imprisonment, he was to "be on supervised release for concurrent terms of three (3) years as to counts one and four, and one (1) year as to count sixteen." R1-52 at 3.

Approximately six weeks after judgment had been entered, the district judge sua sponte entered a corrected judgment stating that Lippett had been sentenced "to be imprisoned for *sixty-five (65)* months, consisting of concurrent terms of forty-one (41) months as to each of counts one and four, and a consecutive term of twenty [sic] (24) months as to count sixteen." R1-63 at 2 (emphasis added). The supervised-release provision was the same as that in Lippett's original judgment.

Lippett argues on appeal the government breached his plea agreement by (1) failing to recommend an acceptance-of-responsibility adjustment and (2) providing reasons why such an adjustment would be unwarranted. According to Lippett, had the government complied with its obligation to recommend a reduction, the district judge may have looked more favorably on Lippett's arguments for a lower sentence. Lippett contends the proper remedy is specific performance at a resentencing.

Lippett further argues the district judge erred by amending Lippett's judgment without first providing notice. Moreover, Lippett contends, his corrected judgment is ambiguous as to whether the one-year, supervised-release term for Count 16 is to be served concurrently with, or consecutively to, the supervised-release terms imposed for Counts 1 and 4. Lippett further asserts the corrected judgment is internally inconsistent as to the prison term imposed for Count 16. Lippett asks us to vacate and remand his sentence for the district judge to correct the errors, after providing him with advance notice of any correction. Lippett also asserts he is entitled to be present when the judge makes the corrections.

## II. DISCUSSION

A. <u>Breach of Plea Agreement</u>

We generally review de novo whether the government breached a plea agreement. *See United States v. De La Garza*, 516 F.3d 1266, 1269 (11th Cir. 2008). Where a defendant fails to raise this issue before the district judge, however, we review for plain error. *Id.* Establishing plain error requires showing (1) an error (2) that was plain, (3) affected one's substantial rights, and (4) seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.*

"The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty." *United*

7

*States v. Taylor*, 77 F.3d 368, 370 (11th Cir. 1996).  Whether a plea agreement was violated is determined according to the defendant's reasonable understanding when he entered the plea.  *United States v. Horsfall*, 552 F.3d 1275, 1281 (11th Cir. 2008) (per curiam).  The failure to object to PSI factual allegations admits those facts for sentencing purposes.  *United States v. Bennett*, 472 F.3d 825, 833-34 (11th Cir. 2006) (per curiam).

Regardless of the standard of review, the government did not breach Lippett's plea agreement.  Under the plain terms of the agreement, the government was relieved of its obligation to recommend a two-level, acceptance-of-responsibility reduction once "adverse information [was] received suggesting such a recommendation to be unwarranted."  R1-29 at 5.  In his plea agreement, Lippett admitted: (1) he approached Whitley Glover and solicited her participation in the scheme underlying the indictment; (2) he gave Glover several fraudulently obtained federal tax refund checks; (3) at Lippett's direction, and in return for a fee paid by Lippett, Glover deposited the checks in several MFFCU accounts; and (4) the total amount of fraudulently obtained checks was $96,805.12.  In his PSI objections and sentencing memoranda, however, Lippett alleged several facts that contradicted the facts he admitted in his plea agreement.  Lippett asserted he did not approach or recruit Glover, or ask for her help in depositing the checks forming the basis for several counts, including Count 4.  Similarly, in his amended

8

sentencing memorandum, Lippett denied having given Glover any U.S. Treasury refund checks. Lippett also sought, in his sentencing memoranda, to minimize the loss-amount for which he was accountable, first by claiming he was responsible for no more than $20,994.84, and later by claiming responsibility for only $13,524.84.

Lippett's withdrawal of his PSI objections during his sentencing hearing did not eliminate his prior denials of conduct he previously admitted in his plea agreement, which were plainly inconsistent with accepting responsibility. *Cf.* U.S.S.G. § 3E1.1 cmt. n.1(A) (explaining a defendant who falsely denies relevant conduct the court determines to be true has acted inconsistently with accepting responsibility). Moreover, by withdrawing his PSI objections, Lippett admitted he told a co-conspirator to deny his involvement in the scheme and to place all blame on Whitley Glover. *See Bennett*, 472 F.3d at 833-34. Thus, as a result of Lippett's own conduct, the government was relieved of its obligation affirmatively to recommend a two-level § 3E1.1(a) reduction. Therefore, the government did not breach Lippett's plea agreement when, during his sentencing hearing, it took no position on whether he was entitled to the reduction.

B. District Judge's Sua Sponte Correction of Scrivener's Error in Judgment

We review the application of Federal Rule of Criminal 36 to correct a judgment at sentencing de novo. *United States v. Portillo*, 363 F.3d 1161, 1164 (11th Cir. 2004) (per curiam). Rule 36 provides: "After giving any notice it

9

considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Fed. R. Crim. P. 36. Where an orally-pronounced, unambiguous sentence conflicts with the written order of judgment, the oral pronouncement controls. *Portillo*, 363 F.3d at 1165.

Under Rule 36, a district judge may correct clerical errors in the written judgment at any time to ensure the judgment is in accord with the oral sentence. *Id.* at 1164 (affirming the district judge's sua sponte order, entered four years after the judge imposed sentence, amending the defendant's written judgment by: (1) correcting the names of the payees of restitution owed by the defendant; and (2) deleting the portion of the original judgment requiring the restitution to be paid jointly and severally with a codefendant); *United States v. Bates*, 213 F.3d 1336, 1340 (11th Cir. 2000) (remanding under Rule 36 for the district judge to correct the written judgment, which stated that the judge had imposed three years of supervised release, to accord with the oral pronouncement of sentence, in which the judge unambiguously had imposed five years of supervised release). Rule 36 may not, however, be used to make substantive alterations to a criminal sentence. *Portillo*, 363 F.3d at 1164. "[W]hile it may be preferable to have the defendant present when the court corrects clerical errors in the judgment under Rule 36," the defendant's presence is not required. *Id.* at 1166.

The district judge was empowered to correct Lippett's judgment under Rule 36. *See id.* at 1164-65; *Bates*, 213 F.3d at 1340. The correction did not substantively alter the sentence imposed by the judge's oral pronouncement, but merely sought to correct the written judgment to accord with the controlling oral pronouncement that Lippett's total prison term was 65 months. *See Portillo*, 363 F.3d at 1164-65.

Lippett has identified no binding precedent requiring advance notice before a district judge corrects a written judgment as permitted under Rule 36. The plain language of the rule vests with the judge the discretion to determine whether advance notice is appropriate. *See* Fed. R. Crim. P. 36. Accordingly, the district judge did not err when he sua sponte corrected Lippett's written judgment.

C. Remaining Scrivener's Error in Judgment

We may remand with instructions to correct a typographical error in the judgment. *See United States v. James*, 642 F.3d 1333, 1343 (11th Cir. 2011) (per curiam) (remanding to correct clerical error in judgment regarding statute of conviction); *United States v. Massey*, 443 F.3d 814, 822 (11th Cir. 2006) (same). Contrary to Lippett's contention, the portion of his corrected judgment addressing supervised release is not ambiguous. First, under the most natural reading of its plain language, the absence of any modifier after the word "concurrent" indicates it applies to all terms that follow. Second, the district judge lacked the authority to

11

impose consecutive supervised-release terms.  *See* 18 U.S.C. § 3624(e) (providing that a term of supervised release "runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release"); U.S.S.G. § 5G1.2 cmt. n.2(C) ("In the case of a consecutive term of imprisonment . . . , any term of supervised release imposed is to run concurrently with any other term of supervised release imposed."); *United States v. Magluta*, 198 F.3d 1265, 1283 (11th Cir. 1999) (vacating and remanding a consecutive term of supervised release), *vacated in part on other grounds*, 203 F.3d 1304, 1305 (11th Cir. 2000).

However, a scrivener's error with respect to Lippett's prison sentence remains in his corrected judgment, which states that the judge ordered Lippett to be imprisoned for "a consecutive term of *twenty (24)* months as to count sixteen." R1-63 at 2 (emphasis added).  We remand for the limited purpose of amending the judgment by adding the suffix "-four" to the word "twenty," so as to comport with the judge's oral pronouncement of sentence.  We leave to the sound discretion of the district judge whether to require Lippett's presence or provide any advance notice when correcting the remaining clerical error in the judgment.  *See* Fed. R. Crim. P. 36; *Portillo*, 363 F.3d at 1166.

**AFFIRMED IN PART, REMANDED IN PART.**