[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13658

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

LUIS EL MATEO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cr-20823-UU-1

_____

Before ROSENBAUM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Luis Mateo appeals his convictions and total sentence of 336 months after pleading guilty to four counts of brandishing a firearm in furtherance of a crime of violence, namely robbery. He contends that the district court erred in three ways: (1) failing to ensure he understood the nature of the charges against him during the plea colloquy; (2) imposing an unlawful restitution order; (3) adding conditions of supervised release in the written judgment that were not orally pronounced or adequately explained at sentencing. After careful review, we affirm.

## I.

According to undisputed facts in the presentence investigation report ("PSR"), Mateo participated in thirteen armed robberies between May 2019 and November 2019, five of which he committed individually. For this conduct, he was indicted on thirteen counts of Hobbs Act robbery and one count of conspiracy to commit Hobbs Act robbery, *see* 18 U.S.C. § 1951(a), in addition to nine counts of brandishing a firearm in furtherance of a crime of violence, namely Hobbs Act robbery, *see* 18 U.S.C. § 924(c)(1)(A)(ii).

Through a written plea agreement, Mateo agreed to plead guilty to four of the brandishing counts in exchange for dismissal of the remaining charges. Among other provisions, the plea agreement contained a waiver of Mateo's right to appeal his sentence,

except in specific circumstances, and a provision regarding restitution. In the restitution provision, Mateo "agree[d] that all victims of the offenses charged against him in the Indictment, that is Counts 1-23, in the instant case may present their claims to this Court for purposes of determining restitution."

In connection with the plea agreement, Mateo also executed a detailed factual proffer describing how, on four separate occasions in November 2019, he brandished a gun while robbing a convenience store. Mateo agreed that the facts detailed in the proffer were sufficient to prove that he knowingly brandished a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).

During the plea colloquy, Mateo confirmed that he had reviewed the indictment and plea agreement and discussed them with his attorney. The court advised that Mateo was pleading guilty to four counts, each "charg[ing] that you brandished a firearm in furtherance of a crime of violence" in violation of § 924(c)(1)(A)(ii), and then the court covered important terms of the plea agreement and the rights he would be waiving by pleading guilty. Mateo confirmed that he wished to plead guilty to these charges and that he agreed with each and every fact contained in the factual proffer. The court accepted the guilty plea as knowing and voluntary.

Mateo's PSR described each of the thirteen robberies and noted that he faced a mandatory minimum of four consecutive terms of seven years' imprisonment for the § 924(c) offenses, for a

total of twenty-eight years.  *See* 18 U.S.C. § 924(c)(1)(A)(ii).  The PSR also noted that the probation office had contacted the victims of each robbery to determine restitution, given that, "as part of the plea agreement, Mateo agreed to pay restitution to the victims of all 13 robberies, which include the robberies not associated with his guilty plea."  And it recommended four special conditions of supervision, which covered substance-abuse treatment, permissible search, financial-disclosure requirements, and unpaid restitution, fines, or special assessments.  Mateo filed a statement of no objection to the PSR.

At sentencing, Mateo confirmed he had no objection to the PSR.  The prosecutor then raised the issue of restitution.  Defense counsel stated that he had reviewed the government's list of restitution figures and discussed it Mateo, and that "we're prepared to stipulate to that full amount of restitution.  I believe it was 23 and change."  The full amount was $23,046.88.  After Mateo personally addressed the court, the district court imposed the minimum term of twenty-eight years' imprisonment and ordered the stipulated amount of restitution: $23,046.88.

The district court also imposed a five-year term of supervised release.  While on supervised release, the court stated, Mateo was to "comply with the mandatory and standard conditions of supervised release, including not committing any crimes; being prohibited from possessing a firearm or other dangerous device; not unlawfully possessing a controlled substance; and cooperating in the collection of DNA."  The court also ordered him to "comply

with the following special conditions: Substance abuse treatment; permissible search; financial disclosure; and the payment of any unpaid restitution and assessments as noted in Part F of the presentence report." When asked for objections to the sentence, defense counsel said Mateo had none.

After sentencing, the district court issued a written judgment memorializing its decision and listing the conditions of supervised release in more detail. Mateo appeals and, through newly appointed counsel, challenges the validity of his guilty plea, the restitution order, and the conditions of supervised release listed in the written judgment.

## II.

We start with Mateo's argument that the plea colloquy was fatally defective because the district court failed to address the nature of the charges against him. Because he raises this argument for the first time on appeal, we review for plain error only. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005). To establish plain error, a defendant must show, among other things, "a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Bates*, 960 F.3d 1278, 1296 (11th Cir. 2020) (quotation marks omitted).

To ensure that guilty pleas are knowing and voluntary, and therefore constitutionally valid, "Rule 11(b) sets out procedures that district courts must follow when accepting guilty pleas." *United States v. Presendieu*, 880 F.3d 1228, 1238 (11th Cir. 2018);

see *McCarthy v. United States*, 394 U.S. 459, 466 (1969). "These procedures are designed to address the three 'core objectives' necessary for a knowing and voluntary guilty plea: (1) that the defendant enters his plea free from coercion, (2) that he understands the nature of the charges, and (3) that he understands the consequences of his plea." *Presendieu*, 880 F.3d at 1238. Although the requirements of Rule 11 are "mandatory," not "aspirational," the adequacy of a plea colloquy is determined by "matters of substance, not form." *United States v. Monroe*, 353 F.3d 1346, 1351 (11th Cir. 2003).

Regarding the second core objective, the district court must "inform the defendant of, and determine that the defendant understands," "the nature of each charge to which the defendant is pleading." Rule 11(b)(1)(G). There is no exact formula for determining whether the court adequately informed the defendant of the nature of the charges. *Presendieu*, 880 F.3d at 1238. The court is not necessarily required to list each element of the offense. *Id.* Rather, the adequacy of a plea colloquy depends "on the complexity of the charges and the defendant's intelligence and sophistication." *Id.*

Here, the district court adequately informed Mateo of the nature of the charges. *See id.* While the court did not list the elements of the offense, the crimes were not complex, and the colloquy otherwise shows that Mateo, who attended school through twelfth grade, understood the nature of the charges against him. Mateo confirmed that he had reviewed the indictment and plea agreement. The court advised that each of the four counts to

20-13658                Opinion of the Court                7

which Mateo agreed to plead guilty charged that he knowingly brandished a firearm during a crime of violence. And Mateo expressly agreed to a detailed factual proffer describing how he used and brandished guns during four robberies. *See id.* at 1241 (stating that a defendant's express assent to a detailed factual proffer showed that he "well understood the nature of the two charges against him"). The colloquy was adequate to satisfy the core objective that Mateo understand the nature of the charges. *See id.* at 1238.

Finally, Mateo has made no showing he would not have pled guilty, and instead faced the full brunt of the indictment and a potential minimum sentence of over 60 years, had he been adequately informed of the elements of his offenses. *See Bates*, 960 F.3d at 1296. We affirm his convictions.

## II.

Next, Mateo contends that the order to pay $23,046.88 in restitution is illegal because it included payments to an individual and businesses that were not victims of the four offenses of conviction.[1] He does not dispute that the restitution figure accurately reflects the losses caused by his charged conduct.

---

[1] The government asserts that this argument is barred by the appeal waiver in Mateo's plea agreement. *See, e.g.*, *United States v. Johnson*, 541 F.3d 1064, 1067 (11th Cir. 2008) ("[A] waiver of the right to appeal a sentence necessarily includes a waiver of the right to appeal the restitution imposed."). Mateo responds that the appeal waiver is no bar because it expressly permits a claim that the "sentence exceeds the maximum permitted by statute," which he says

The restitution order is governed by the Mandatory Victims Restitution Act. *See* 18 U.S.C. § 3663A. As relevant here, it requires restitution to be paid to the victims of certain offenses of conviction.[2] 18 U.S.C. § 3663A(a)(1). In addition, "[t]he court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense." 18 U.S.C. § 3663A(a)(3).

Here, the district court was permitted to award "restitution to persons other than the victim[s] of the offense[s]" of conviction because it was "agreed to by the parties in a plea agreement." *See id.* In the plea agreement, Mateo and the government expressly "agree[d] that all victims of the offenses charged against him in the Indictment, that is Counts 1-23, in the instant case may present their claims to this Court for purposes of determining restitution."

We cannot accept Mateo's claim that this language merely permitted the victims of the charged offenses to "present their claims" to the court, but did not authorize the court to award them

_____

is the case here. We decline to resolve this dispute and instead affirm on alternative grounds.

[2] The MVRA's definition of "victim" is not limited to convicted or even charged conduct, so long as the offense "involves as an element a scheme, conspiracy, or pattern of criminal activity" and the person was directly harmed by the defendant's conduct in the course of that scheme, conspiracy, or pattern. 18 U.S.C. § 3663A(a)(2). This provision does not apply here, however, because § 924(c)'s elements do not involve a scheme, conspiracy, or pattern, even if the robberies plainly were a pattern of criminal activity.

restitution unless they were victims of the convicted conduct. As the government notes, such a construction would render this provision entirely superfluous. There would be no point to authorizing "all victims of the offenses *charged*" to "present their claims" for "purposes of determining restitution" if the court could not in fact award them restitution.

Before the district court, moreover, Mateo unambiguously agreed with the view that the plea agreement permitted restitution to the victims of all charged offenses. *Cf. United States v. Schrimsher*, 58 F.3d 608, 610 (11th Cir. 1995) (treating defense counsel's comments at sentencing about "stipulati[ng]" to certain losses during plea negotiations as an "admission by [the defendant] that, as part of the plea agreement, he effectively conceded, indeed stipulated, that the court could order restitution" for losses not relating to the offense of conviction under 18 U.S.C. § 3663(a)(3)). The PSR clearly stated that "as part of the plea agreement, Mateo agreed to pay restitution to the victims of all 13 robberies, which include the robberies not associated with his guilty plea." Mateo made no objection to that statement, and he then expressly stipulated at sentencing to the full restitution amount of $23,046.88, which was based on all charged conduct.

Accordingly, based on the plain terms of the plea agreement, and Mateo's own similarly unambiguous statements below, his "argument on appeal that the court lacked the authority under [§ 3663A] to order restitution" for all charged conduct "is without merit." *Id.*

Finally, "even if the argument had merit, [Mateo] waived the point by inviting the court to order the restitution he now contests." *Id.*; *see, e.g.*, *United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005) ("It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." (quotation marks omitted)).  By expressly stipulating at sentencing to the full restitution amount of $23,046.88, Mateo waived any right to contest the amount of restitution ordered on appeal.  *See United States v. Gregg*, 179 F.3d 1312, 1317 (11th Cir. 1999) ("By expressly agreeing to the amount of restitution, Gregg waived any right to contest the amount of restitution ordered.").

For these reasons, we affirm the restitution award.

## III.

Finally, Mateo maintains that the district court added discretionary conditions of supervised release in the written judgment that were not imposed orally at sentencing, and that they must be stricken.[3]   As a fallback argument, he says the court failed to

---

[3] Again, the government asserts that this argument is barred by the appeal waiver.  Mateo responds that he waived the right to appeal his sentence, meaning the oral sentence pronounced at sentencing, not conditions that were imposed for the first time in the written judgment.  *See, e.g.*, *United States v. Singletary*, 984 F.3d 341, 345 (4th Cir. 2021) (holding that such a claim was outside the scope of an appeal waiver).  We do not address whether the waiver applies to this argument and instead affirm on the merits.

adequately explain why the discretionary conditions were warranted. We consider each argument in turn.

## A.

Defendants are entitled to "be present when sentence is announced by the court." *Henley v. Heritage*, 337 F.2d 847, 848 (5th Cir. 1964).[4] The sentence is then reduced to a written judgment. *See id.* It follows that "[w]hen a sentence pronounced orally and unambiguously conflicts with the written order of judgment, the oral pronouncement governs." *United States v. Bates*, 213 F.3d 1336, 1340 (11th Cir. 2000). The remedy for a conflict between an orally pronounced sentence and the written judgment is a limited remand with instructions for the district court to amend the judgment to conform to the earlier pronouncement in the defendant's presence. *United States v. Chavez*, 204 F.3d 1305, 1316 (11th Cir. 2000).

"On the other hand, there may be no conflict but simply an ambiguity." *Scott v. United States*, 434 F.2d 11, 21 (5th Cir. 1970). In such a case, "[t]he actual intention of the sentencing judge is to be ascertained both by what [s]he said from the bench and by the terms of the order [s]he signed, or from [her] total acts." *Id.*; *see also United States v. Purcell*, 715 F.2d 561, 563 (11th Cir. 1983) ("When there is an ambiguity in the oral sentencing, as opposed to

---

[4] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

a conflict between the oral pronouncement and the written judgment, it is proper to look to the written judgment to ascertain the court's intention.").

Certain conditions of supervised release are mandated by statute. *See* 18 U.S.C. § 3583(d) (listing several required conditions). The rest are discretionary. *See id.* ("The court may order, as a further condition of supervised release, . . . any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate."); 18 U.S.C. § 3563(b) (listing various discretionary condition of probation). The applicable guideline policy statement, U.S.S.G. § 5D1.3, splits discretionary conditions into four categories: (1) "standard" conditions recommended for all terms of supervised release; (2) "special" conditions recommended for particular circumstances; (3) additional special conditions that may be "appropriate" on a case-by-case basis; and (4) "discretionary" conditions not otherwise specified. U.S.S.G. § 5D1.3(b)–(e).

Mateo relies on case law from other circuits holding that discretionary conditions of supervised release must be orally pronounced at sentencing. *See United States v. Diggles*, 957 F.3d 551, 556–57 (5th Cir. 2020) (*en banc*); *United States v. Rogers*, 961 F.3d 291, 296 (4th Cir. 2020); *United States v. Anstice*, 930 F.3d 907, 910 (7th Cir. 2019). These circuits reason that defendants are entitled to an opportunity to object in person to any conditions that the court retains discretion to impose, even if those conditions are

treated as "standard" under § 5D1.3.[5]  *Diggles*, 957 F.3d at 558–59 ("If a condition is discretionary, the court must pronounce it to allow for an objection."); *Rogers*, 961 F.3d at 297–98 ("Just as with other discretionary aspects of a criminal sentence, a defendant may contest whether a discretionary condition is appropriate under all the relevant circumstances.").

But even in the circuits that require oral pronouncement of discretionary conditions, there is no inexorable command to specifically list out each condition at sentencing.  Rather, these circuits recognize that courts may incorporate conditions by reference to other sources, including the guidelines, the PSR, or a standing order in the particular district.  *See Diggles*, 957 F.3d at 560–62 ("A standing order provides advance notice of possible conditions just as a PSR recommendation does.  And the in-court adoption of those conditions is when the defendant can object."); *Rogers*, 961 F.3d at 299 ("[A] district court may satisfy its obligation to orally pronounce discretionary conditions through incorporation.").  The critical question is whether "the sentencing judge notifie[d] the defendant of the conditions being imposed and allow[ed] an opportunity to object."  *Diggles*, 957 F.3d at 563.

---

[5] Not all circuits follow that approach.  *See, e.g., United States v. Napier*, 463 F.3d 1040, 1043 (9th Cir. 2006) ("Imposition of . . . mandatory and standard conditions is deemed to be implicit in an oral sentence imposing supervised release."); *United States v. Truscello*, 168 F.3d 61, 62 (2d Cir. 1999) ("Implicit in the very nature of supervised release is that certain conditions are necessary to effect its purpose.").

Here, Mateo has not shown that the written judgment conflicts with the terms of his oral sentence. At sentencing, the district court ordered Mateo to comply with "the mandatory and standard conditions of supervised release" and with several conditions "as noted in Part F of the presentence report." It then issued a written judgment elaborating on the conditions imposed. Our review of the judgment's discretionary conditions shows that they were listed either in the PSR or in a 1988 standing order in the Southern District of Florida listing the conditions "hereby imposed" whenever a defendant is placed on supervised release "unless altered or modified by special order." *See* S.D. Fla., Administrative Order 1988-06 ("Standing Order 1988-06"), *Standing Conditions of Probation and Supervised Release* (1988), *available at* https://www.flsd.uscourts.gov/sites/flsd/files/adminorders/1988-06.pdf (last visited Jan. 26, 2022).

The conditions listed in Standing Order 1988-06 closely track the guidelines' "standard" conditions.[6] *See* U.S.S.G. § 5D1.3(c)(1)–(13). They also include a few conditions not regarded as "standard" by the guidelines, including the following requirements: (a) to

---

[6] The written judgment does differ from Standing Order 1988-06 regarding when Mateo must give notice of a change in residence or employment, though it is consistent with § 5D1.3. *Compare* Standing Order 1988-06 (requiring notice within 72 hours of a change), *with* U.S.S.G. § 5d1.3(c)(5) (requiring notice ten days in advance of a change, if possible). Mateo does not raise any specific issue about this difference, and, despite the difference, the nature of the reporting obligation is essentially the same.

20-13658                Opinion of the Court                15

support dependents, *see* U.S.S.G. § 5D1.3(d)(1); (b) to not frequent places where controlled substances are illegally sold, distributed, or administered, *see* 18 U.S.C. § 3563(b)(6); and (c) to "refrain from excessive use of alcohol," *see id.* § 3563(b)(7).

However, we need not decide whether oral pronouncement of all discretionary conditions is required. Even assuming that it is, the district court's comments were sufficient to afford Mateo notice of the conditions being imposed and an opportunity to object. *See Diggles*, 957 F.3d at 563. The court expressly referenced the discretionary conditions described in the PSR, which was sufficient to satisfy the pronouncement requirement as to those conditions. *See id.* at 561–62; *Rogers*, 961 F.3d at 299. And the court's reference to the "standard conditions of supervised release" reasonably referred to the standard conditions imposed in the Southern District of Florida, which in turn closely parallel the "standard" conditions of the guidelines.

We do not view the district court's failure to expressly reference Standing Order 1988-06 or § 5D1.3 as dispositive. If Mateo had any concern about what the court intended by its reference to "standard" conditions, he had the opportunity at sentencing to raise the point when the court asked for objections to the sentence, if not earlier in the hearing. *See United States v. Drapeau*, 644 F.3d 646, 657 (8th Cir. 2011) ("Drapeau was aware that the district court had stated that the standard conditions would apply and thus had the opportunity to ask the district court to specify which . . . standard conditions would be applied."); *see also Diggles*, 957 F.3d at 560

("That opportunity [to object] exists when the court notifies the defendant at sentencing that conditions are being imposed.").

In our view, the district court's comments reflect "an ambiguity in the oral sentencing, as opposed to a conflict between the oral pronouncement and the written judgment." *Purcell*, 715 F.2d at 563. We therefore may "look to the written judgment to ascertain the court's intention" and to clarify the oral pronouncement. *Id.* Because the written judgment lists the conditions of supervised release in detail and is consistent with the court's cursory comments at sentencing, we see no basis on which to strike any condition or to remand.

### B.

As a fallback position, Mateo argues that the district court failed to explain why the discretionary conditions were justified in light of the statutory factors and his individual circumstances.

We review this argument for plain error because, as we just explained, Mateo had the opportunity to object to or seek clarification of the conditions of his supervised release at sentencing. *See United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014) (stating that we review for plain error when the defendant had the opportunity to raise an argument below). To prevail under this standard, Mateo must show that he was harmed in a real and substantial way. *See Rosales-Mireles v. United States*, 585 U.S. ___, 138 S. Ct. 1897, 1904–05 (2018) ("[T]he defendant ordinarily must show a reasonable probability that, but for the error, the outcome of the

proceeding would have been different." (quotation marks omitted)).

Mateo cannot establish plain error. The explanation required for a sentencing decision varies greatly by circumstances. *Rita v. United States*, 551 U.S. 338, 357 (2007) ("Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation."). And the circumstances "may well make clear" the reasons for the court's decision, such "when a judge decides simply to apply the Guidelines to a particular case." *Id.* at 356.

Here, the record shows that the district court decided to apply the conditions recommended by the probation officer, the guidelines, and Standing Order 1988-06 for the undisputed facts of Mateo's case. *See* U.S.S.G. § 5D1.3(c)(1)–(13), (d)(1)–(4), (8); Standing Order 1988-06; *see also United States v. Ridgeway*, 319 F.3d 1313, 1317 (11th Cir. 2003) (stating that courts need not make specific findings to impose clear conditions based on undisputed facts). Mateo does not identify a particular condition he believes is unwarranted or is unduly restrictive of his liberty. Nor does he suggest he would have objected below had the district court explained the conditions in more detail, or that he would object if we remanded. So Mateo has not shown that any error may have affected the outcome of sentencing. *See Rosales-Mireles*, 138 S. Ct. at 1904–05.

## IV.

In sum, and for the reasons stated above, we affirm Mateo's convictions and total sentence.

**AFFIRMED.**